S94A1634. LATTIMORE v. THE STATE.
(454 SE2d 474)

HUNSTEIN, Justice.

Kitwana Lattimore, a/k/a Kojak, was indicted on charges of murder and criminal attempt to commit armed robbery. His August 1993 trial resulted in a conviction on the attempt charge but a mistrial on the murder charge. After a second trial in December 1993 ended in a mistrial, Lattimore was retried in January-February 1994 and was found guilty of murder. The trial court sentenced him to life in prison and subsequently granted his motion to merge the attempt conviction into the murder conviction and vacated the sentence on the attempt conviction. Lattimore appeals from the denial of his motion for a new trial.[1]

1. The State introduced testimony from witnesses who had overheard Steven Earls discussing his plan to rob Harold Phillip Haggard and introduced the statement made to police by one witness that he heard 16-year-old appellant agree to help Earls. Other witnesses testified that shortly before the crime occurred, they saw appellant and Earls walking together toward the location where Haggard, a salesman who marketed goods from his van, was parked. Employees and customers of a store located across from Haggard's van testified they heard shots and looked outside the store windows to see two youths running from the van. All these witnesses agreed that except for the

---

[1] The crimes occurred October 30, 1992. Lattimore was indicted by the Clarke County grand jury in its October 1992 term. He was found guilty of criminal attempt to commit armed robbery on August 22, 1993 and was sentenced the same day. He was found guilty of murder on February 3, 1994, and sentence was imposed that day. The motion merging and vacating the conviction and sentence for criminal attempt to commit armed robbery was granted March 17, 1994. Lattimore's motion for new trial, filed on March 4, 1994, was denied in its amended form on June 6, 1994. A notice of appeal was filed on July 6, 1994 and the appeal was docketed in this Court on July 21, 1994. This appeal was submitted for decision without oral argument on September 12, 1994.

injured victim, who had exited his van seeking help, the only persons in the area at the time the shots were fired were the two youths. The paramedic who treated Haggard testified that the victim, who had been shot once through the chest, said he had been robbed and that "more than one" was involved. Haggard later died from his wound.

A witness who knew both appellant and Earls testified that he saw the two running from the scene seconds after the shots were fired; less than one minute after hearing the shots, two other witnesses saw appellant and Earls, who was carrying a pistol, come from the direction of the gunshots and saw Earls go into his aunt's nearby apartment. Clothing worn by appellant and Earls was later found by the police in the apartment. A police officer testified that based on information volunteered by Earls, he recovered a S.W.D.-manufactured 9 mm semi-automatic assault-type pistol, similar in appearance to the weapon one witness, a former military man, had seen a man matching Earls' description carry from the crime scene. The owner of this pistol testified she had left the pistol at an apartment; another witness testified he saw appellant and the pistol at that apartment a few hours before the shooting. A cartridge fired from a S.W.D.-manufactured 9 mm semi-automatic assault-type pistol was found near the van.

The evidence was sufficient to authorize the jury to find appellant guilty beyond a reasonable doubt of murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the denial of his motion to suppress his custodial statement was error because (a) the statement was made while he was in custody as the result of an illegal arrest under color of a warrant not supported by probable cause and (b) because the statement was obtained in violation of OCGA § 15-11-19.

(a) The officer who obtained the warrant testified that he presented sworn testimony, derived from the police investigation into the crime, that witnesses had identified appellant as one of the youths seen running away from the crime scene shortly after the shots were heard and that police had recovered clothing appellant had left at an apartment that matched eyewitness descriptions of clothing worn by the perpetrators of the crime. We find the record shows that the officer who sought the warrant supplied the issuing juvenile court judge with sufficient information to support a finding that probable cause existed for the issuance of the warrant. *Devier v. State*, 253 Ga. 604 (5) (323 SE2d 150) (1984); *Donalson v. State*, 192 Ga. App. 37 (1) (383 SE2d 588) (1989).

(b) Two days after the warrant was issued, appellant, accompanied by his father, turned himself in to the Department of Youth Services. Appellant was arrested there and taken to the police department where he gave the statement he sought to suppress. It is uncontroverted that the police did not comply with OCGA § 15-11-19

(a).[2] However, incriminating statements obtained in violation of the Juvenile Code are not rendered per se inadmissible, *State v. McBride*, 261 Ga. 60, 63 (2) (b) (401 SE2d 484) (1991); rather, "the issue to be considered is whether there was a knowing and intelligent waiver by [appellant] of his constitutional rights in making the incriminating statements. [Cits.]" Id. Reviewing the record in light of the factors set forth in *McBride*, the evidence shows that at the time of the questioning, appellant was 16, had completed ninth grade, and was in the company of his father. Both the charges against appellant and his *Miranda* rights were carefully explained to him and to his father; appellant and his father signed the waiver of rights form. No threats or promises were made to appellant and his statement was made under normal questioning that lasted approximately one hour and was terminated at appellant's request. Although not indicted at the time of the questioning, appellant was under arrest. There was no finding whether appellant repudiated the statement appellant made during his interrogation. Our review of the record leads us to conclude that appellant knowingly and intelligently waived his constitutional rights, *McBride*, supra, and voluntarily made the statement in question. The trial court did not err by denying the motion to suppress.

3. Appellant contends the trial court erred in its charge on parties involved in the commission of a crime, raising three arguments of which we find only one meritorious.

The trial court charged the jury on the indictment (the sole count being malice murder "by shooting [the victim] with a certain firearm"), defined malice murder, and charged the jury at length on what constitutes the malice necessary to convict. After charges on parties to a crime, see OCGA § 16-2-20, and the legal ramifications of intentionally aiding and abetting in the commission of a crime, the trial court instructed the jury:

I charge you that if you find that the State has shown beyond a reasonable doubt that two or more persons formed a common intent and purpose to go to the place of business of another and commit an armed robbery and if in the furtherance of such common intent and purpose to commit an armed robbery, such persons went to the place of business of the person where it is contemplated that the armed robbery would be committed, and if in pursuance of such common

---

[2] OCGA § 15-11-19 (a) requires a person taking a child into custody "with all reasonable speed and without first taking the child elsewhere" to (1) release the child without bond to his custodian; (2) take the child to a medical facility when applicable; (3) bring the child immediately before the juvenile court or promptly contact a juvenile court intake officer; or (4) bring a child suspected of a delinquent act before the superior court.

intent and purpose to commit an armed robbery one of those persons present intentionally aiding and abetting in such effort to commit an armed robbery and acting with *that intent and purpose* shot and killed the person sought to be robbed, then in that event you, the jury, would be permitted to find the act of the one shooting and killing the other is attributable to and considered as the act of all present intentionally aiding and abetting in the effort to commit armed robbery and you would be authorized to find each equally guilty of murder under the law. Whether or not such events occurred or were proven in this case is a matter for you, the jury, to determine.

(Emphasis supplied.)

Appellant was indicted only on malice murder; the trial court's offer to charge the jury on felony murder was declined. A person commits malice murder when he acts with the unlawful intention to kill without justification or mitigation. *Bailey v. State*, 70 Ga. 617 (2) (1883). A person also commits the offense of murder "when, in the commission of a felony, he causes the death of another human being *irrespective of malice*." (Emphasis supplied.) OCGA § 16-5-1 (c). "The primary difference between the offenses of malice murder and felony murder is that felony murder does not require malice or the intent to kill. [Cit.]" *Holliman v. State*, 257 Ga. 209, 210 (1) (356 SE2d 886) (1987). Instead, felony murder requires "that the defendant possess the requisite criminal intent to commit the underlying felony." Id. Accord *Edge v. State*, 261 Ga. 865-866 (2) (414 SE2d 463) (1992) (theory of felony murder depends on the transfer or imputation of malice from the mens rea of the felony to the killing).

There is no question that a malice murder can be committed in the commission of an armed robbery where the unlawful intent required for malice murder exists, see, e.g., *Smith v. State*, 258 Ga. 181 (2) (366 SE2d 763) (1988), and there is no question but that in such instances, a party concerned in the commission of that armed robbery may be charged with and convicted of malice murder. See, e.g., *Lobdell v. State*, 256 Ga. 769 (7) (353 SE2d 799) (1987). The problem here, however, is that the phrase "*that* intent and purpose" can only be construed as referring back to the intent and purpose of the actual killer to commit the armed robbery. Under this charge, the intent of the accomplice (which is to be attributed to the party to the crime so as to render him equally guilty of the crime) is not the malicious intent required of murder but instead is the intent to commit the armed robbery. Based on our analysis of this language, we are constrained to agree with appellant that the charge given by the trial court erroneously authorized the jury to find appellant, as a party to

the armed robbery, guilty of malice murder upon a finding that the person who shot and killed the robbery victim did so while acting with the intent to commit the armed robbery, i.e., the intent necessary for felony murder.[3]

By referring to the intent to commit the armed robbery, rather than the intent required of malice murder, the trial court improperly instructed the jury to return a verdict of guilty of a type of murder not charged in the indictment or included as an offense in the jury instructions. Although the evidence was sufficient to support a verdict of malice murder, see Division 1, supra, it was not overwhelming, and in view of the previous hung juries and the difficulty inherent in proving malice, we cannot say this error was harmless. *Anderson v. State*, 262 Ga. 26 (2) (413 SE2d 732) (1992); see also *Dunaway v. State*, 214 Ga. App. 128, 130 (1) (447 SE2d 153) (1994).

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 6, 1995.

*Vicki E. Carter,* for appellant.

*Harry N. Gordon, District Attorney, Richard L. Dickson, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellee.

---

[3] For malice murder, it would have been more appropriate for the instruction to have read that

> if in pursuance of such common intent and purpose to commit an armed robbery one of those persons present intentionally aiding and abetting in such effort to commit an armed robbery and acting *with the unlawful intention to kill, i.e., with malice,* shot and killed the person sought to be robbed, then in that event you, the jury, would be permitted to find the act of the one shooting and killing the other is attributable to and considered as the act of all present intentionally aiding and abetting in the effort to commit armed robbery and you would be authorized to find each equally guilty of murder under the law.