S95A1539. GREEN v. THE STATE.
(466 SE2d 577)

THOMPSON, Justice.
Keith Green was convicted of malice murder, armed robbery, street gang terrorism and possession of a firearm during the commis-

---

[6] See id.
[7] See 253 Ga. at 662.

sion of a felony.[1] He appeals, asserting, inter alia, the trial court erred in failing to direct a verdict of acquittal on the charge of street gang terrorism.[2] We agree and reverse that conviction.

Viewed in a light most favorable to the State, we find the following: Green and the victim, Mercer Mallory, attended school together in Albany, Georgia. Mallory worked as a bag boy at a local supermarket and it was known that he carried cash. One afternoon, he left school with his friend, Courtney Johnson, who was going to drive him home. Green also asked Johnson for a ride, and Johnson obliged. Johnson asked some other youths if they wanted to ride, too. Two of them decided to go along; they rode in the back seat with Green.

Green pulled a pistol and ordered Johnson to drive to Blue Springs. As they approached their destination, Green instructed Johnson to drive down a dirt road and stop the car. Green ordered everyone to get out of the car and he instructed Johnson to check Mallory's pockets. Johnson complied and handed Green approximately $100. Green instructed one of the other youths to take a gold chain which Mallory wore around his neck. The youngster was shaking too badly to take the chain so Mallory took it off himself and handed it to Green.

Then Green ordered Mallory to get down on his knees. Mallory did so, crying and begging for his life. Green shot Mallory in the face and Mallory fell to the ground. Green continued to shoot Mallory until he emptied the pistol. Driving away with Johnson and the other youths, Green laughed and asked if they had heard Mallory "begging like a bitch."

1. The evidence was sufficient to enable any rational trier of fact to find Green guilty of malice murder, armed robbery, and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Green asserts the street gang terrorism conviction must be reversed because the State failed to prove a "pattern of criminal gang activity" as that term is defined in OCGA § 16-15-3 (2). We agree.

OCGA § 16-15-3 (2) defines a "pattern of criminal gang activity" as the "commission, attempted commission, or solicitation" of two or more enumerated offenses. The Code section specifies that the of-

---

[1] The crimes were committed on April 27, 1994. Green was indicted on July 7, 1994. The trial began on November 28, 1994, and concluded on December 2, 1994. The jury found Green guilty on all counts and the trial court sentenced him to concurrent sentences of life for malice murder, life for armed robbery, 12 months for street gang terrorism and five years for possession of a firearm during the commission of a felony. Green's timely motion for new trial was dismissed for want of prosecution on May 22, 1995, and Green filed a notice of appeal on June 7, 1995. The case was docketed in this Court on June 26, 1995, and submitted for consideration on briefs in September 1995.

[2] See OCGA § 16-15-1 et seq.

fenses can include malice or felony murder, other crimes of violence, the sale or distribution of drugs, terroristic threats, arson or influencing witnesses. It also provides that the offenses must have been committed on separate occasions or by more than one person; at least one of the offenses must have occurred after July 1, 1992; and the last of the offenses must have occurred within three years of a prior offense.

The State established that Green was a member of the Black Gangster Disciples ("BGD") and that he murdered Mallory to gain rank in that gang. The State called two witnesses to prove that the BGD had engaged in a pattern of criminal gang activity.

One witness, a police officer who was qualified as an expert in gang identification and deterrence, testified that in the year preceding the trial, four Albany homicides were gang related and two of those homicides were attributed to the BGD. Probed for details, the officer stated that he gleaned his information concerning the homicides from other investigators. Thus, the officer revealed that his information was not based on firsthand knowledge because he himself did not investigate the crimes. The investigating officers did not testify.

It is axiomatic that "[a] witness testifying as to the existence of a fact must testify from his own firsthand knowledge." Agnor's Ga. Evid. (2nd ed.), § 9-1; OCGA § 24-3-1. Thus, where a detective states that he has no firsthand knowledge of the results of crime lab tests, he cannot testify about them. *Jones v. State*, 247 Ga. 268, 272 (9) (275 SE2d 67) (1981). Of course, an expert can base his opinion on facts which he did not personally observe. OCGA § 24-9-67. But the expert must base his opinion on facts supported by evidence in the case; he cannot base his opinion on what he has heard in private conversations with others. *Moore v. State*, 221 Ga. 636, 643 (146 SE2d 895) (1966); *Flanagan v. State*, 106 Ga. 109, 110 (32 SE 80) (1899). See also Agnor's Ga. Evid. (2nd ed.), § 9-7. It follows that the officer's testimony was insufficient to establish a "pattern of criminal gang activity" as that term is defined in OCGA § 16-15-3 (2).

Another witness testified that he became a member of the BGD in 1990; and that, as a member of the BGD, he engaged in "a couple of car-jackings off and on, armed robberies, robbery by force." The witness did not specify when these crimes were committed. Thus, that witness's testimony was also insufficient to establish that the BGD committed two or more of the specified crimes within the relevant time period, i.e., that one of the crimes was committed after July 1, 1992, and within three years of a prior crime. No other evidence was introduced to establish the necessary predicate offenses.

3. In his closing argument, the prosecutor stated:

> [L]et's talk about what [defense counsel] says in relation
> to the defendant's statement. He said that if the defendant

had refused to testify, had refused to say anything to [an investigator] when he was called into [the investigator's] office in investigating this thing because we know he gave a statement, but if he had refused to, that I would be here jumping up and down saying the defendant refused to say anything, but ladies and gentlemen, that is improper. If I comment on the defendant's refusal to say anything, the judge would be all over me. That is improper. I cannot say that and [defense counsel] knows it. . . . I can't comment on the fact if the defendant did or did not give a statement, and he knows that is impermissible.

Defense counsel moved for a mistrial, asserting the prosecutor improperly commented on Green's failure to testify at trial. The trial court denied the motion and Green assigns error upon that ruling.

We find no error. The prosecutor did not manifestly intend to comment on Green's failure to testify. *Ranger v. State*, 249 Ga. 315, 319 (290 SE2d 63) (1982). On the contrary, the prosecutor was only replying to defense counsel's argument concerning a statement Green made to the police. Likewise, in context, the jury would not have naturally and necessarily taken the prosecutor's argument to be a comment on Green's failure to testify. Id. True, at one point, the prosecutor inadvertently used the word "testify." But he immediately clarified his remarks and focused on Green's "statement."

4. In *Whitlock v. State*, 230 Ga. 700, 706 (198 SE2d 865) (1973), this Court observed:

The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.

Accord *Lamb v. State*, 241 Ga. 10, 12 (243 SE2d 59) (1978).

Green asserts the trial court erred in refusing to permit him to inquire about a potential juror's attitudes toward gangs and gang members. We find no manifest abuse of discretion inasmuch as the potential juror had already explained her feelings about gangs and stated that she would set them aside and decide the case on the evidence presented at trial.

5. Citing *Dunn v. State*, 123 Ga. App. 607 (182 SE2d 317) (1971), Green contends the trial judge committed prejudicial error by frequently making negative comments about the way in which his lawyer

was handling the case. This contention is totally without merit. The trial judge simply admonished defense counsel on several occasions.[3] It cannot be said that he interfered with the conduct of the trial to the detriment of the defense.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 12, 1996.

*Chevene B. King, Jr.,* for appellant.

*Britt R. Priddy, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.

---

[3] For example, the judge cautioned Green's lawyer that he should not continue to argue with the court once a motion or objection had been ruled upon.