## S07A0301. SWANSON v. THE STATE.

(644 SE2d 845)

HINES, Justice.

Rodgerick Swanson appeals his convictions for malice murder, aggravated battery, burglary, and violation of the Georgia Controlled Substances Act in connection with the fatal stabbing of Ronald Gresham and the debilitating knifing of Donita Gresham Banks. Swanson challenges the denial of his motion to suppress his video-taped statement to police; the admission into evidence of information from his cell phone; the trial court's instruction to the jury regarding witness identification; and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that on July 13, 2003, Ronald Gresham and Donita Gresham Banks were among a group of adults and children who had gathered at the house of their mother, Mary Allen, for a family dinner. Swanson, who lived across the street, entered the house and stated to the group, "Hey. How are you all doing?" Swanson was naked and was holding a butcher knife in each hand. He then stabbed Gresham, who was seated on the couch, fatally lacerating Gresham's diaphragm, stomach, and liver. Banks tried to "pull" Swanson off of Gresham and Swanson attacked her, stabbing her in the abdomen and piercing her

---

[1] The crimes occurred on July 13, 2003. On March 19, 2004, a Cobb County grand jury returned a 13-count indictment against Swanson charging him with: Count 1 – the malice murder of Ronald Gresham; Count 2 – the felony murder of Ronald Gresham while in the commission of aggravated assault; Count 3 – the aggravated battery of Donita Gresham Banks by rendering her arm useless; Count 4 – the aggravated battery of Donita Gresham Banks by rendering her colon useless; Count 5 – the aggravated battery of Donita Gresham Banks by rendering her liver useless; Count 6 – the aggravated battery of Donita Gresham Banks by seriously disfiguring her stomach; Count 7 – the aggravated assault of Donita Gresham Banks; Count 8 – the aggravated assault of Davetta Roberts; Count 9 – burglary of the house of Mary Allen; Count 10 – cruelty to children by intentionally allowing the minor child M. S. to witness a forcible felony; Count 11 – cruelty to children by intentionally allowing the minor child C. R. to witness a forcible felony; Count 12 – violation of the Georgia Controlled Substances Act by unlawfully possessing cocaine; and Count 13 – violation of the Georgia Controlled Substances Act by unlawfully possessing less than one ounce of marijuana. Swanson was tried before a jury October 25-29, 2004. On October 28, 2004, the trial court announced in open court, but outside the presence of the jury, that it would direct verdicts of not guilty on Counts 3, 5, and 10, and an order doing so subsequently issued on November 5, 2004. The remaining charges were submitted to the jury, which returned verdicts of guilty on Counts 1, 2, 4, 6, 7, 9, 12, and 13, and verdicts of not guilty on Counts 8 and 11. On November 4, 2004, Swanson was sentenced to life without parole on Count 1; 20 years in prison each on Counts 4 and 9, to be served consecutively to each other and to the sentence on Count 1; 10 years in prison on Count 12, to be served concurrently with the sentence on Count 1; and 12 months in prison on Count 13, to be served concurrently with the sentence on Count 1. The verdict on Count 2 stood vacated by operation of law, and Counts 6 and 7 merged with Count 4 for the purpose of sentencing. A motion for new trial was filed on November 4, 2004, amended on May 5, 2005, and denied, as amended, on May 6, 2005. A notice of appeal was filed on May 31, 2005, and the case was docketed in this Court on October 30, 2006. The appeal was submitted for decision on December 25, 2006.

abdominal wall, liver, colon, and stomach. Swanson chased several other family members out of the house and around a tree before running across the street towards his apartment. Soon thereafter, Swanson's white truck was seen racing down the street.

The family called 911 at 2:54 p.m. and the police were dispatched to the scene; they went to Swanson's apartment and found it open and vacant. A search of the area turned up two knives in the woods behind the apartment matching a knife set owned by Swanson; the knife block in Swanson's apartment was missing two knives. The found knives were consistent with the injuries sustained by Gresham and with the descriptions of the weapons used in the attacks given by the family. A subsequent analysis of the recovered knives revealed DNA matching Swanson's profile. The police also found marijuana cigarettes and cocaine in Swanson's apartment.

At 2:53 that afternoon, Swanson's friend, Griffin, called Swanson on his cell phone to ask assistance with car problems; Griffin had earlier called Swanson, around 1:00 p.m., to discuss her car issues. During this later call, Swanson told Griffin that "he had had a nightmare and that he had hurt some people really bad and it felt real to him at that point" and that he was driving to the Cobb County Adult Detention Center to turn himself in. Griffin met Swanson at the detention center parking lot, but rather than turning himself in to the authorities, he stayed with Griffin the remainder of the afternoon. Later, at Swanson's request, Griffin drove the two past Swanson's residence, where they observed numerous police cars and people at the crime scene. Swanson told Griffin to keep driving, and they drove to Griffin's home. The television was on, and Griffin and Swanson heard the 11:00 p.m. news report that the police were searching for Swanson. Swanson left. He later returned to Griffin's home, telling her that he had gone to the detention center and the police were not looking for him. Griffin called 911 and gave a description of Swanson's vehicle and the direction he was headed. Swanson was arrested that evening in the area of Griffin's home, and his truck was impounded. After his arrest, Swanson signed a waiver of rights form and gave a videotaped statement to the police.

Three of the adults present during the knife attacks identified Swanson from a photographic lineup as the man who entered the house and stabbed Gresham and Banks. Pursuant to a search warrant, Swanson's truck was searched and his cell phone was recovered. From the cell phone, the police were able to obtain a log of incoming calls to the phone, including those from Griffin on the afternoon of July 13, 2003.

1. The evidence at trial was sufficient to enable a rational trier of fact to find Swanson guilty beyond a reasonable doubt of the crimes

for which he was found guilty and sentenced. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Swanson contends that the trial court erred in denying his motion to suppress and allowing into evidence his videotaped statement to police because even though he made a clear and unambiguous request for counsel, the police officers did not cease his interview, but rather coaxed and cajoled him until he signed the waiver, thus unconstitutionally inducing him to waive his right to counsel. But, the contention is unavailing for both procedural and substantive reasons.

First, upon the State's tender into evidence of the videotape,[2] Swanson's attorney stated that there was "no objection" to its admission at trial. By so doing, Swanson waived any objections to the admission of the videotape, including those raised in his motion to suppress. *Monroe v. State*, 272 Ga. 201, 204 (6) (528 SE2d 504) (2000).

Nevertheless, a review of the record, including the videotape at issue, supports the determination that Swanson did not make an unambiguous and unequivocal request for counsel, thereby requiring a cessation of all questioning until an attorney was made available to him or until he reinitiated the conversation. *Roebuck v. State*, 276 Ga. 136, 138 (1) (575 SE2d 895) (2003). Indeed, the videotape of the interview demonstrates that whenever Swanson made any mention of an attorney, the detective clearly advised him that he had the right to have an attorney present during questioning and that the interview would cease until an attorney could be present; the detective repeatedly and directly asked Swanson whether he wanted an attorney, and Swanson ultimately rejected the right to counsel.[3]

---

[2] Following the trial court's direction, the videotape was reviewed by the parties for the purpose of redaction, and it appears that the version played for the jury was that agreed to by the defense.

[3] At the start of the interview, the detective asked Swanson his age, and Swanson commented that "cop shows" advise people not to talk to police until an attorney is present. In response, the detective explained that before he reads a suspect his rights, he asks about the suspect's age and education in order to gauge whether the suspect is capable of understanding the reading of those rights. The detective then asked Swanson about his age, education, and any drug use, and read aloud the form advising Swanson of his rights. Swanson responded that he could not sign the form. After the detective told Swanson that not signing the waiver was completely within his rights, Swanson stated, "I don't have no problem talking. . . . If you have some questions, you can ask me your questions." The detective repeated that he could not ask him questions unless he agreed to what is on the form because that would violate his rights. Swanson began to relate his actions after he learned that he was wanted by police, and again the detective advised Swanson that the interview could not continue unless the waiver was signed. Swanson then read aloud the waiver form, and after reading the parts advising him of his right to have an attorney present and the right to remain silent, Swanson stated, "but I want to get to the root of this." Swanson continued to read aloud the part of the waiver stating that he did not want a lawyer at that time, and commented, "No, it's not I don't want a lawyer at this time," but that one could not be obtained fast enough to be present in the interview room. The detective explained that if Swanson wanted an attorney, the interview would then end and

3. Swanson contends that the trial court erred in allowing into evidence testimony regarding information obtained from his cell phone, including the time and length of calls, and the incoming and outgoing phone numbers. He argues that such evidence was inadmissible because his right to discovery was violated, i.e., that such evidence was not provided to him pretrial in violation of Georgia's Criminal Procedure Discovery Act, OCGA § 17-16-1 et seq., because although he had been notified that the cell phone had been seized as a result of the search of his truck, he was not given any indication until the detective testified at trial that the contents of the cell phone had been accessed and the call logs retrieved. Swanson further argues that he was surprised and prejudiced by the introduction of the call logs because his attorney's trial strategy was based upon a timeline conflicting with that reflected by the information recovered from the cell phone.

When the State tendered the cell phone at trial, Swanson's attorney stated that there was no objection, and the cell phone was admitted into evidence. The State then began to question the detective who retrieved the phone about its contents. It was only after the detective was asked if he knew what Griffin's cell phone number was that Swanson objected.[4] When it was learned that four days prior to his testimony, the detective had made notes on what he found on the cell phone, the trial court ultimately made the finding that the State had violated the discovery provisions by not immediately providing the detective's notes to Swanson. The trial court gave Swanson 15 to 20 minutes to review the notes; it also gave Swanson the chance to speak with the detective about any found information, but Swanson did not avail himself of this opportunity.

Pretermitting the correctness of the trial court's determination that a discovery violation had occurred, the trial court's actions in giving Swanson's counsel an opportunity to inspect the notes as well as the chance to question the detective in that regard were a permissible response to any failure by the State to comply with the criminal

---

would not resume until an attorney for Swanson was present. Swanson replied, "I don't need him or her to come in and tell me to tell a lie. I'm not going to tell a lie. I don't need nobody to come in and coerce me. So I'm going to make sure that this is right because I know you are going to present this to the DA, to the grand jury and all this stuff here." Swanson again read from the waiver form, commenting, "It says, 'I do not want a lawyer at this time.' Yes, I would like to have one at this time but due to the officers want to ask me questions, I'm willing to answer. I understand and know what I am doing. At this particular minute, I'm answering questions pertaining to this case." After reading the rest of the form, Swanson unequivocally stated, "I'll answer your questions" and then signed the waiver form.

[4] Swanson's attorney stated, "Your honor, at this point I have got to object. Number one, unless he can show the technology and show the actual thing to the jury, I object there; and number two, one of the things I asked for in discovery was this information and I have never received it, so I object to it being brought up at this time."

discovery provisions. OCGA § 17-16-6; *Felder v. State*, 270 Ga. 641, 645 (6) (514 SE2d 416) (1999). Indeed, the evidence would be inadmissible only if Swanson was able to show both prejudice and bad faith. OCGA § 17-16-6; *Felder v. State* at 645 (6). Swanson showed neither.

At trial, Swanson did not allege bad faith on the part of the State, nor does he do so now on appeal.[5] Moreover, Swanson fails to demonstrate how he was prejudiced by the trial court's refusal to exclude the evidence. While Swanson claims the evidence of the call log adversely affected his defense which involved an alternative timeline, the call log evidence was merely cumulative of Griffin's direct testimony. Consequently, admission of the evidence was not error. *Felder v. State* at 645 (6).

4. Swanson further challenges the admission of the cell phone information on the basis that it was obtained as a result of an illegal search and seizure. He urges that the search warrant issued for his truck specifically stated that the request was to search for blood, hair, fibers, and other physical evidence of the crime; consequently, the seizure of the cell phone exceeded the authority conferred by the search warrant, and that even if the cell phone itself was lawfully seized, the search of the phone's contents was unlawful without a valid search warrant for the phone itself.

But, Swanson did not raise these issues at trial or object to the admission of the cell phone into evidence at the time it was introduced at trial; therefore, he has foreclosed appellate review in this regard. *Horton v. State*, 269 Ga. App. 407, 409 (604 SE2d 273) (2004), citing *Hawes v. State*, 240 Ga. 327, 333 (7) (240 SE2d 833) (1977). Even assuming arguendo that admission of the information gleaned from Swanson's cell phone was error, any such error would be harmless beyond a reasonable doubt in light of the overwhelming evidence of Swanson's guilt. *Lopez v. State*, 267 Ga. App. 532, 538 (6) (601 SE2d 116) (2004).

5. Citing *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), Swanson asserts that the trial court committed reversible error by charging the jury that the level of certainty demonstrated by an eyewitness in his or her identification of a defendant is a factor that it might consider in assessing the reliability of the eyewitness. However, inasmuch as Swanson requested that the trial court give such charge, he is now precluded from challenging it as error. *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006). Even so, the giving

---

[5] At trial, after the prosecutor stated that she "was not trying to hide anything from [Swanson's attorney] whatsoever," Swanson's counsel responded, "It's not a question of whether she was trying to hide anything from me."

of such an instruction does not require reversal when there is other significant evidence corroborating the eyewitness identification. *Woodruff v. State*, 281 Ga. 235, 236 (2) (637 SE2d 391) (2006). Furthermore, the trial court instructed the jury about the State's burden of proving Swanson's identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations; therefore, the jury charge on level of certainty was harmless as it is highly probable that it did not contribute to the verdict. Id.

6. Lastly, Swanson contends that his trial counsel was ineffective because of counsel's failure to object to the admission of the cell phone records since they were obtained by an illegal search and seizure and counsel's failure to be prepared for the admission of the cell phone records. But, the failure to make a meritless objection, see Division 4, supra, cannot support a claim of ineffective assistance of counsel. *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001). What is more, in order to prevail on his claim of ineffective assistance of trial counsel, Swanson has to show that his attorney's performance was deficient, and that but for the deficiency, there is a reasonable probability that the result of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Warbington v. State*, 281 Ga. 464, 465 (2) (640 SE2d 11) (2007). Assuming for the purpose of Swanson's argument that his attorney was deficient for not having knowledge of the contents of the cell phone, Swanson cannot show the required prejudice in light of the overwhelming evidence establishing his guilt. *Fuller v. State*, 277 Ga. 505, 506 (3) (591 SE2d 782) (2004).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 14, 2007.

*Mitchell D. Durham*, for appellant.

*Patrick H. Head*, District Attorney, *Amelia G. Pray, Dana J. Norman*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Laura D. Dyes*, Assistant Attorney General, for appellee.