S07A1291. COBB v. THE STATE.
(658 SE2d 750)

SEARS, Chief Justice.

The appellant, Larry Cobb, appeals from his conviction for the murder of Grady Jones.[1] On appeal, Cobb contends, among other things, that the trial court erred in ruling against his claim that he

---

* We note that appellant cannot rely on any actual possession of those portions of the lands east of Old Ridge Road included in the 1991 conveyance because those portions were not included in its deed to the disputed property but were instead conveyed to it by separate deed.

[1] The crimes occurred on September 27, 2003. On January 12, 2004, Cobb was indicted for malice murder, felony murder with aggravated assault serving as the underlying felony, felony murder with the possession of a firearm by a first offender probationer serving as the underlying felony, aggravated assault, and the possession of a firearm by a first offender probationer. Cobb's first two trials resulted in hung juries. However, on September 30, 2005, after a third jury trial, Cobb was found guilty on all counts of the indictment. The trial court sentenced Cobb to life for malice murder and to five consecutive years for the possession offense. The felony murder convictions were vacated as a matter of law, and the trial court merged the aggravated assault conviction with the malice murder conviction. Cobb's trial counsel filed a motion for new trial on October 20, 2005. Cobb subsequently obtained new counsel for appeal, and new counsel filed an amended motion for new trial on September 20, 2006. The trial court denied Cobb's motion for new trial, as amended, on March 19, 2007, and Cobb filed a notice of appeal on April 16, 2007. The appeal was docketed in this Court on May 8, 2007, and was orally argued on September 11, 2007.

received ineffective assistance of trial counsel. For the reasons that follow, we agree that trial counsel provided ineffective assistance in failing to object to improper hearsay testimony, requiring that we reverse Cobb's convictions.

1. At trial, Terrie Boyd testified that she had a romantic relationship with both Cobb and Jones. Boyd testified that she was a crack addict at the time of the crimes, that Cobb was her drug supplier, and that Cobb and Jones had had prior disputes regarding Boyd, with Cobb threatening to kill Jones on one occasion on August 24, 2003. Boyd also testified that, a week or two after the August 24 incident, Jones came by Cobb's apartment to pick her up and that Cobb and his brother beat up Jones and told him never to come over again. Boyd added that she did not actually see Cobb and his brother beat Jones, but that she heard it. Boyd also testified that she did not see Jones immediately after the beating and did not, in fact, see him until two days later.

According to Boyd, for three or four days before September 27, 2003, she and Jones had been living at the Suburban Lodge in DeKalb County. During that time, they used crack cocaine extensively. On September 27, they decided to go to Cobb's apartment to get some more drugs. Boyd testified that, when they got there, Jones remained in the car for fear that Cobb would hurt him, and that Boyd went into Cobb's apartment. Cobb insisted on using Boyd's car, and Boyd eventually told him that Jones was in her car. Cobb, who had a black gun, got Boyd's car keys, and the two of them ran out the door. Boyd testified that Cobb opened the back passenger door of her Jeep; that Jones, who had been lying down, sat up; that Jones had his hands in a surrender position; and that Cobb hit Jones on the head with the gun and then shot him three times. According to Boyd, Jones did not have a weapon. Boyd testified that Cobb fled the scene in a red pick-up truck. The truck was later found abandoned, and Cobb's fingerprints were located on the truck.

On cross-examination, Cobb showed that Boyd's testimony in one of Cobb's prior trials contradicted her testimony in the present trial in several significant ways. First, in the prior proceeding, Boyd testified that she did not hear Cobb and his brother beating the victim on August 24 whereas in the present trial she testified that she did hear the beating. Second, in the prior trial, Boyd testified that she was sitting in the driver's seat when the victim was shot, as opposed to standing by the driver's door. Third, in the prior trial, Boyd testified that, when Cobb opened the door to her car, he shot the victim; Boyd did not testify in the prior trial that Cobb hit the victim in the head before shooting him. Moreover, on cross, Boyd acknowledged that, when she called 911 after the shooting, the 911 operator asked her five or six times if she knew who had shot the victim and that she

responded that she did not know. She also acknowledged that she initially told the police that she had gone to Cobb's apartment to get a spare tire instead of to buy cocaine.

A firearms examiner testified that the bullets and casings found at the murder scene were fired from a .45 caliber pistol, and that a holster that was recovered from Cobb's apartment pursuant to a search warrant was designed for a .45 caliber pistol.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Cobb guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Cobb contends that his attorney was ineffective when he failed to object to hearsay evidence from the State's firearms expert and that the trial court thereafter erred by failing to sustain defense counsel's hearsay objection to this same testimony. We conclude that trial counsel was ineffective in failing to object and that the ineffectiveness was prejudicial, requiring a new trial.

The State's firearms examiner testified that, when she received the holster found in Cobb's apartment, she called the company that made the holster, gave a "technical representative" the model number of the holster, and asked the representative what model of gun the holster was designed to carry. She added that the representative told her that it was for a "Colt .45 caliber pistol with a three and a half inch barrel." Trial counsel did not object to this testimony. However, when the State attempted to have the firearms examiner repeat this testimony, counsel did object on hearsay grounds, and the objection was sustained. The trial court then permitted the firearms examiner to answer the question, over defense objection, after the State asked her what she had learned about the holster based on "any learned documents or consulting with other experts in the field."

Cobb contends that trial counsel was ineffective by failing to raise a hearsay objection when the firearms examiner first testified that a company representative had told her that the holster was for a "Colt .45 caliber pistol with a three and a half inch barrel." We agree. A party must object to evidence the first time it is offered, and the failure to do so is a waiver of any objection to the evidence that the party might have had.[3] Thus, Cobb's counsel waived any objection that he may have had to the admission of the testimony.

Moreover, the testimony was inadmissible hearsay. An expert may not give an opinion that is based entirely on the hearsay reports,

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Stephens v. State*, 270 Ga. 354, 360 (509 SE2d 605) (1998).

knowledge, or opinions of other experts.[4] "A testifying expert is not to serve as a conduit for the opinions of others,"[5] and "must base his opinion on facts supported by evidence in the case; he cannot base his opinion on what he has heard in private conversations with others."[6] In the present case, it is clear that the State's firearms expert based her opinion on what she had been told by the company representative. For this reason, her testimony was inadmissible, and trial counsel provided deficient performance in failing to object to it in a timely fashion.[7]

We turn now to the prejudice prong of Cobb's ineffectiveness claim. In this regard, Cobb's "burden is to show only 'a reasonable probability' of a different outcome" in the trial because of trial counsel's deficient performance, "not that a different outcome would have been certain or even 'more likely than not.' "[8] The firearms expert's inadmissible testimony was the only evidence connecting Cobb with a .45 caliber pistol, the type of weapon used to shoot the victim. To conclude that Cobb was not prejudiced by this testimony, the dissent relies on the fact that the expert also testified that the holster could have accommodated other caliber guns. This fact, however, does not diminish the critical nature of this evidence to the State. At the crime scene, only .45 caliber bullets were found, and the expert's testimony was the only evidence in the case linking Cobb to a .45 caliber gun. Thus, the expert's testimony linking Cobb to this type of gun was extremely prejudicial to Cobb.

Moreover, this inadmissible testimony buttressed the testimony of the one witness on which the State hinged its case. This witness, Terri Boyd, was an admitted crack addict; testified that she was on a multi-day crack binge at the time of the shooting; threatened to walk out of the courtroom in response to a question about her use of crack cocaine; and requested a break in her testimony, stating that she was "not comfortable" on cross-examination and did not "have to listen to this." Moreover, after her testimony, the trial court threatened to incarcerate Boyd for contempt for her repeated "outbursts," "inappropriate comments," and "lack of respect for the process." To put it mildly, Boyd's credibility was a serious issue at trial, and the firearms

---

[4] *Leonard v. State*, 269 Ga. 867, 870-871 (506 SE2d 853) (1998); *Green v. State*, 266 Ga. 237, 239 (466 SE2d 577) (1996).

[5] *Leonard*, 269 Ga. at 871.

[6] *Green*, 266 Ga. at 239.

[7] *Swanson v. State*, 282 Ga. 39, 44 (644 SE2d 845) (2007) (to prevail on ineffectiveness of counsel claim, a defendant must show that counsel provided deficient performance and that, if not for that performance, there is a reasonable probability that the outcome of the trial would have been different).

[8] *Schofield v. Gulley*, 279 Ga. 413, 416 (614 SE2d 740) (2005), quoting *Strickland v. Washington*, 466 U. S. 668, 693 (104 SC 2052, 80 LE2d 674) (1984).

expert's testimony connecting Cobb to the murder weapon unquestionably bolstered Boyd's credibility. Finally, the State's evidence of Cobb's guilt was not overwhelming and two prior trials have resulted in hung juries.[9] In the latter regard, in addressing prejudice, the dissent fails to acknowledge that Cobb's first two trials resulted in hung juries, and that this Court has previously held that prior hung juries are a factor supporting a finding of harmful error.[10]

Given these factors, we conclude that there is a reasonable probability that the outcome of the trial would have been different if the testimony of the firearms expert had been excluded. Accordingly, we must reverse Cobb's convictions.

3. We conclude that two other issues raised by Cobb must be addressed, as they involve issues that could recur on remand.

(a) Cobb contends that his trial counsel was ineffective in failing to move to suppress evidence of the holster found in his apartment. To determine whether trial counsel provided deficient performance in this regard, we must determine whether a motion to suppress the holster would have had merit. We conclude that a motion to suppress would have been properly denied by the trial court. Although the information in the affidavit relating to the murder contained nothing more than "a conclusory statement which [gave] the magistrate virtually no basis at all for making an independent judgment regarding the existence of probable cause"[11] to search for evidence of the murder, the information in the affidavit did contain sufficient information for the magistrate to come to the common-sense conclusion that evidence of contraband could be found at Cobb's apartment.[12] Because of this latter conclusion, the officer who conducted the search of Cobb's apartment was properly there in order to search for evidence of contraband. Moreover, because this officer had had discussions with an eyewitness in which the eyewitness told him that she saw Cobb shoot Jones in front of the apartment, and because the

---

[9] See *Lattimore v. State*, 265 Ga. 102, 106 (454 SE2d 474) (1995) (because of previous hung juries and the lack of overwhelming evidence of guilt, court could not rule that error in question was harmless).

[10] Id.

[11] *Dobbins v. State*, 262 Ga. 161, 163-164 (415 SE2d 168) (1992).

[12] See *State v. Hunter*, 282 Ga. 278, 278-279 (646 SE2d 465) (2007) ("in determining if probable cause exists to issue a search warrant, [magistrate must] make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

officer saw the holster in plain view in an area in which he had a right to be while searching for contraband, the officer properly seized the holster in question.[13]

For these reasons, we conclude that a motion to suppress evidence of the holster would have been unsuccessful and that, therefore, Cobb's trial counsel did not provide deficient performance in failing to file such a motion.

(b) Cobb also contends that trial counsel provided ineffective assistance in failing to move to redact the portion of his first offender plea that related to carrying a concealed weapon. We conclude that trial counsel did provide deficient performance in this regard.

In June 2003, Cobb pled guilty to one count of violating the Georgia Controlled Substances Act, a felony, and one count of carrying a concealed weapon, a misdemeanor, and received a first offender probationary sentence. In the present case, Cobb was indicted for felony murder with the possession of a firearm by a first offender probationer serving as the underlying felony, and, in a separate count of the indictment, he was charged with the possession of a firearm by a first offender probationer. In Cobb's two prior trials, previous trial counsel had successfully moved to have the concealed weapon plea redacted from the evidence of Cobb's first offender sentence. In the present trial, trial counsel did not move to have the concealed weapon plea redacted, and Cobb contends that trial counsel provided deficient performance in failing to do so. We agree.

Cobb's 2003 plea to carrying a concealed weapon was not an element of the current charge of the possession of a firearm by a first offender probationer. Under OCGA § 16-11-131 (b), the State had to prove that Cobb was "on probation as a felony first offender." Because the crime of carrying a concealed weapon is a misdemeanor, Cobb's plea to that offense was not a material element of the State's case.[14] Thus, if trial counsel had objected to the admissibility of that charge and requested its redaction, the trial court would have erred in admitting evidence of the charge.[15]

---

[13] See *Moss v. State*, 275 Ga. 96, 104-105 (561 SE2d 382) (2002) (if an officer does not violate the Fourth Amendment in arriving at the place that she sees an item in plain view and if the officer has probable cause to believe that the item is evidence of a crime, the officer may properly seize the evidence).

[14] See *Ragan v. State*, 264 Ga. 190, 191-192 (442 SE2d 750) (1994) (because the offense of operating a motor vehicle after being declared a habitual violator is predicated on driving *after* being declared a habitual violator, a defendant's prior driving offenses that caused him to be declared a habitual violator are not material to the current charge and are inadmissible to prove that he was driving after being declared a habitual violator). Accord *Hester v. State*, 159 Ga. App. 642, 643-644 (284 SE2d 659) (1981).

[15] Id.

For these reasons, trial counsel provided deficient performance in failing to seek redaction of the misdemeanor charge. However, because we are reversing Cobb's conviction on different grounds, we do not need to address the prejudice prong of this ineffectiveness claim.[16]

Judgment reversed. All the Justices concur, except Hunstein, P. J., and Benham and Carley, JJ., who dissent.


BENHAM, Justice, dissenting.

Assuming, without deciding, that counsel provided deficient performance when he failed to timely object to the firearms expert's hearsay testimony that the manufacturer designed the holster for a Colt .45 gun[17] and that the testimony was inadmissible,[18] I respectfully disagree with the majority's conclusion in Division 2 that the testimony was prejudicial. First, the impact of the hearsay testimony was substantially mitigated on cross-examination when the firearms expert testified that the holster could have accommodated other caliber guns made by 10 to 12 different manufacturers, as long as the gun had a 1911 frame similar to the Colt .45. Based on this cross-examination testimony, the jury need not "only" have concluded that the holster connected appellant to a .45 caliber gun.

There was other evidence connecting appellant, a known drug dealer, to the crime that may have factored more heavily into the jury's deliberations than the holster. Stokes v. State, 281 Ga. 825 (8) (c) (642 SE2d 82) (2007) (admission of hearsay not prejudicial where there was other evidence of facts at issue). Prior to the murder, appellant had a violent history with Jones, threatening to kill him on at least one occasion and beating and pistol-whipping him on another occasion in August 2003 just a month before the murder on September 27, 2003. There was evidence that the hostility between the accused and the victim was related to their shared romantic interest in Boyd who was an eyewitness to the murder. Boyd testified that, moments before the murder, appellant said Jones was a "dead man," ran out of the apartment with a gun to where Jones was waiting in a

---

[16] Because Cobb's remaining enumerations are based on alleged errors that are not likely to occur on retrial, it is unnecessary to address those issues.

[17] When asked what type of holster was found in appellant's apartment, the expert testified:

It's a Galco brand leather holster. . . . And when this holster was submitted, I called the Galco company and talked to a technical representative and asked them what model of weapon this holster was designed for. And he related to me that it was designed for a Colt .45 caliber pistol with a three and a half inch barrel.

[18] See Velazquez v. State, 282 Ga. 871 (3) (655 SE2d 806) (2008) (expert's reliance on hearsay goes to the weight of the expert's opinion, not its admissibility); Brewer v. State, 280 Ga. 18 (2) (622 SE2d 348) (2005); Roebuck v. State, 277 Ga. 200 (1) (586 SE2d 651) (2003).

vehicle for Boyd, and shot Jones three times. The coroner confirmed that Jones was killed with bullet wounds to the head and trunk of the body. The police found .45 caliber bullets and shells at the scene, including the interior of the vehicle in which Jones' body lay. The firearms examiner testified that all the bullets were fired from the same weapon. Thus, with or without evidence of the holster itself or hearsay evidence that the manufacturer designed the holster for a Colt .45 gun, a jury could have, with reasonable probability, concluded that appellant shot Jones and, because of the .45 caliber bullets at the scene, that the murder weapon was a .45 caliber gun. It has not been shown but for the admission of the hearsay testimony of the holster's design that appellant would have been acquitted. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Thus, appellant cannot prevail on his claim of ineffective assistance of counsel.

I am authorized to state that Presiding Justice Hunstein and Justice Carley join this dissent.

DECIDED MARCH 17, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008.

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.