### S05A0846. THORNTON v. THE STATE.
(620 SE2d 356)

BENHAM, Justice.

A severely decomposed, partially-skeletonized body was found in August 2002 in a creek behind the Clayton County house occupied by

---

appellant Georgette Benita Thornton and her boyfriend, co-indictee and co-defendant Reginald Lover Rolland. The victim, who had suffered six gunshot wounds to the torso, was identified as Andre Harrison through DNA comparison of blood samples from the parents of Andre Harrison and a sample of the victim's skeletal muscle.[1]

The State presented evidence that appellant and Rolland picked up the victim, a crack cocaine dealer, at the house from which he sold drugs several days before he was killed. The trio returned to the Thornton-Rolland home where they smoked crack cocaine for two days. Appellant testified that Rolland, angry because appellant had engaged in sexual relations with the victim, shot the victim as the victim was leaving. Because Rolland threatened to kill her, appellant helped drag the victim's body to the backyard and cover it with plywood sheeting. The next day, Rolland put the victim's body in the creek. Rolland testified he was awakened from a drug-induced sleep by the sound of gunshots and went outside to see appellant shooting the victim. A week after the shooting, appellant told the father of one of her children that Rolland had killed the victim and the whereabouts of the victim's remains. When police officers arrived the next day, appellant gave them permission to search the creek. Rolland was arrested upon the discovery of the body, and appellant took police to the apartment complex in which the man to whom Rolland had given the murder weapon lived. Rolland led police to the man to whom he had given the gun, and test results on the gun obtained from the man indicated it had fired the bullets recovered from the victim's body. A person housed in the Clayton County jail for driving with a suspended license testified Rolland told him he killed the victim because the victim had cheated him in a drug deal and was "messing around" with Rolland's girlfriend. The law enforcement officer who administered a post-arrest polygraph examination to appellant[2] testified there was

---

[1] The victim's body was found August 22, 2002, and Rolland was arrested and charged with murder shortly thereafter. During its May 2003 term, the Clayton County grand jury returned a true bill of indictment charging appellant and Reginald Rolland with malice murder, felony murder (aggravated assault), aggravated assault, and concealing a death. Appellant was arrested in June 2003 and her and Rolland's joint trial took place September 22-25, 2003. The trial court directed a verdict of acquittal on the malice murder charge, and the jury found appellant guilty of felony murder and concealing a death. On October 9, 2003, appellant was sentenced to consecutive sentences of life imprisonment for felony murder and five years imprisonment for concealing a death. Appellant's motion for new trial, filed October 13, 2003, and amended June 23, 2004, was the subject of a hearing held on September 23 and November 19, 2004. On January 3, 2005, the trial court filed its order granting appellant's motion for new trial with regard to the conviction for concealing a death and denying it with regard to the felony murder conviction. Appellant filed a notice of appeal January 7 and the case was docketed in this Court on February 20. It was orally argued on May 16, 2005.

[2] The three questions asked were: "Are you the person who shot [the victim]? Did you shoot [the victim] during August 2002? Did you, yourself, pull the trigger of the gun that shot [the victim]?"

a 99 percent probability appellant was being deceptive when she answered the examiner's three questions in the negative. Appellant stipulated to the admissibility of the polygraph test results prior to undergoing the examination.

1. Appellant contends the evidence was insufficient to authorize the jury to find her guilty beyond a reasonable doubt of felony murder. Appellant's co-defendant testified he saw appellant shoot the victim and, while accomplice testimony alone is insufficient to support a conviction for a felony (OCGA § 24-4-8), the testimony concerning the results of appellant's polygraph examination is sufficient corroboration of an accomplice's testimony to authorize a guilty verdict. *Smith v. State*, 245 Ga. 205 (2) (264 SE2d 15) (1980). See also *Vassar v. State*, 273 Ga. 747 (1) (545 SE2d 906) (2001).

2. Appellant maintains the trial court erred when it failed to sever the trials of appellant and her co-defendant sua sponte. "The right to a severance under . . . Georgia law . . . arises only upon an appropriate motion. No motion to sever having been made in the trial court, the contention is without merit." *Coachman v. State*, 236 Ga. 473 (1) (224 SE2d 36) (1976).[3]

3. Appellant also takes issue with the trial court's failure to instruct the jury sua sponte on the law of coercion. The trial court based its grant of a new trial to appellant on the charge of concealing a death on this omission. The only other offense for which appellant was convicted was felony murder. In a case such as the one before us, a felony murder case with aggravated assault as the underlying felony, there is no reversible error in failing to charge the jury on coercion as a defense to felony murder where the only evidence of coercion presented to the jury occurred after the victim was killed and the underlying felony completed. *Kelly v. State*, 266 Ga. 709 (2) (469 SE2d 653) (1996).

4. Citing alleged procedural irregularities, appellant maintains the admission of the polygraph results deprived appellant of her constitutional rights to counsel and to due process. Appellant contends the document in which appellant stipulated to the admissibility of the results was flawed since the stipulation was presented for signature to appellant by the polygraph examiner and did not contain defense counsel's signed acknowledgment that he had explained the

---

[3] Under Standard 13-4.2 of the American Bar Association's Standards for Criminal Justice, a trial court may order severance of defendants sua sponte before trial "if a severance could be obtained on motion of the prosecution or a defendant, or during trial if the severance is required by manifest necessity." See also *Hill v. State*, 239 Ga. 278 (3) (236 SE2d 626) (1977), which notes the ABA Standard authorizing a trial judge to order severance before trial sua sponte. In the case at bar, appellant's co-defendant filed a motion to sever which the trial court denied, and there has been no showing that the trial court abused its discretion in so doing.

ramifications of the polygraph to appellant. At the evidentiary hearing on the motion for new trial, trial counsel testified he told appellant before the polygraph exam that the results of a failed exam would be used against her during a trial, and appellant testified counsel did not so inform her. The results of a polygraph examination are inadmissible except by stipulation of the parties (*State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977)), or to explain an actor's conduct or motive when such is relevant to the issues on trial (*Morris v. State*, 264 Ga. 823 (1) (452 SE2d 100) (1995)), and the stipulation signed by appellant informed her the results of a failed polygraph could be used against her. Appellant's trial counsel testified he had made her aware of the ramifications of taking a polygraph examination and the trial court, sitting as factfinder while deciding the motion for new trial, was authorized to believe his testimony and reject the testimony to the contrary given by appellant. *Conger v. State*, 245 Ga. App. 399 (3) (b) (537 SE2d 798) (2000). See also *Peralta v. State*, 276 Ga. 218 (2) (576 SE2d 853) (2003) (trial court's findings of fact on motion for new trial are upheld unless clearly erroneous). While a document summarizing the ramifications of taking a stipulated polygraph examination signed by counsel and the defendant would foreclose postconviction recriminations about having submitted to a polygraph exam, there is no constitutional requirement that ramification explanation be so documented. Accordingly, appellant's contention that the polygraph exam was procedurally flawed is without merit.

5. Appellant also complains the polygraph examination was fatally flawed because no questions were asked about appellant's role in concealing the victim's death. The polygraph expert hired by appellate counsel testified at the hearing on the motion for new trial that a polygraph examination is called a "specific" examination because it targets one issue. Since the specific issue of the exam taken by appellant was whether she had shot the victim, questions concerning the concealment of the victim's body were, in the expert's opinion, irrelevant and should have been the specific topic of a second polygraph examination. In the absence of evidence of a fatal flaw in the exam, appellant's contention is without merit.

6. Appellant's remaining enumerations of error assert trial counsel rendered ineffective assistance of counsel in a number of ways.

> The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "When a defendant challenges a conviction, the question is whether there is a reasonable

probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695.

*Woods v. State*, 271 Ga. 452, 453 (2) (519 SE2d 918) (1999).

(a) Appellant believes trial counsel was ineffective in his failure to seek severance of appellant's trial from that of her co-defendant. Trial counsel testified at the hearing on the motion for new trial that he had had several years of experience in criminal litigation at the time he represented appellant and that he did not seek a severance because his strategy was to have the co-defendant in the courtroom where he could be repeatedly referred to as the killer and where the jury could see his outbursts of temper. Trial counsel also knew he was likely to have the opportunity to cross-examine the co-defendant in a joint trial. Inasmuch as an informed strategic decision concerning severance does not amount to ineffective assistance of counsel (*Callendar v. State*, 275 Ga. 115 (3) (a) (561 SE2d 113) (2002)), appellant's contention on this issue is without merit.

(b) Appellant makes several allegations of ineffective assistance in connection with the stipulated admission into evidence of the results of the polygraph examination appellant underwent. Trial counsel testified appellant wished to testify for the State and the assistant district attorney agreed to call her as a witness and drop the murder charge against appellant if she passed a polygraph. Trial counsel informed appellant the results of the polygraph would be used against her should she fail the exam, but he had found her credible and was "100% sure" she was going to pass. Stipulating to the admission of polygraph test results is a valid trial strategy and there was evidence the ramifications were explained to appellant. *Horne v. State*, 273 Ga. App. 132 (5) (614 SE2d 243) (2005). Accordingly, there was no deficient performance in agreeing to the stipulation. Id. Appellant also contends trial counsel erred in stipulating to the admission of the polygraph results without checking appellant's pre-examination mental and emotional status and, upon her failure of the exam, by failing to investigate whether she suffered a mental illness that could have affected the results of the exam.[4] The polygraph examiner testified that the results of a polygraph exam are not affected by bad life experiences suffered by the examinee, and the

---

[4] Two days before she underwent the polygraph, appellant was seen by a clinical psychologist who believed she was suffering from post-traumatic stress disorder (PTSD). The day after she took the exam, the jail's psychiatric nurse practitioner diagnosed her as suffering from PTSD with anxiety and depression and prescribed thyrozene, benadryl, and prozac. Appellant testified at the hearing on the motion for new trial that she had been suffering from anxiety, stress, nightmares and flashbacks at the time she took the polygraph examination, but only told the examiner she was anxious and nervous.

psychologist who diagnosed appellant as suffering from post-traumatic stress disorder and who acknowledged he knew nothing about polygraph evidence, described the ailment as a heightened state of anxiety. The expert retained by appellate counsel viewed the videotape of the examination and testified appellant "displayed no indication of being nervous [or] distraught. . . ." Since there was no testimony that appellant's mental and emotional status affected appellant's polygraph test results, appellant has not shown how she was prejudiced by trial counsel's failure to inquire about her mental and emotional status. Id. Likewise, inasmuch as appellant has failed to establish she suffered a mental illness that affected the exam's results, she has not shown any prejudice from trial counsel's failure to investigate her mental status at the time she took the exam.

Appellant also sees defective performance in trial counsel's failure to seek funds for a private polygraph examiner, claiming the exam given was flawed by the fact that the examiner was a sergeant of the Clayton County Police Department involved in the murder investigation. The expert hired by appellate counsel testified the examination of appellant "was administered as fairly and as accurately as a polygraph examination could be administered. I don't think I've ever critiqued one better than this nor have I ever administered one which was done better than this." While appellant takes issue with the examiner questioning her about the murder after he told her the examination reflected she was being deceptive in her denials of having shot the victim or handled the weapon that killed him, the expert hired by appellate counsel saw the examiner's conduct as "not in any way offensive" and as within the parameters of appropriate behavior for law enforcement polygraph examiners. In the absence of evidence that the examiner's role as a law enforcement officer adversely affected his role as polygraph examiner, trial counsel's failure to object to the examination as flawed does not amount to deficient performance. Appellant also finds fault in trial counsel's failure to retain an expert to establish the polygraph examination was flawed. In light of the professional admiration voiced by the expert hired by appellate counsel, appellant failed to prove deficient performance in this regard.

(c) Appellant contends trial counsel rendered ineffective assistance at trial by failing to object to the co-defendant's cross-examination of appellant about her prior bad acts; by failing to object to the redaction of a portion of the statement of the jail inmate who testified about statements the co-defendant made while in jail awaiting trial; and by failing to argue coercion to the jury and to ask for a jury instruction on coercion.

(i) At her trial, appellant testified the relationship between her and her co-defendant became abusive six months after its inception.

On cross-examination by co-defendant's counsel, appellant clarified that her co-defendant was the abuser and co-defendant's counsel then asked her about an incident where she armed herself with a butcher knife and chased her co-defendant down the street. After acknowledging that conduct, appellant also acknowledged, in response to questioning by co-defendant's counsel, that she had struck a former boyfriend in the head with a baseball bat while she was pregnant some years ago. Co-defendant's counsel's attempt to ask appellant about a 1993 incident and a general inquiry into other assaults appellant might have perpetrated were cut short when the trial court sustained trial counsel's objections. On appeal, appellant, asserting the cross-examination about the incidents involving the butcher knife and the baseball bat was improper, contends trial counsel rendered ineffective assistance when he failed to object. We disagree. Contrary to appellant's assertion, evidence of the butcher-knife incident was offered as impeachment of appellant's testimony that her co-defendant was the abusive partner in their relationship and was, therefore, not inadmissible for failure to follow Uniform Superior Court Rule 31. *Stansell v. State*, 270 Ga. 147 (3) (510 SE2d 292) (1998). Accordingly, trial counsel's failure to object does not constitute deficient performance. While the baseball-bat incident does not qualify as impeachment evidence since it did not involve the co-defendant, trial counsel testified at the motion for new trial hearing that he did not object to the evidence because his strategy was not "to make [appellant] look like an angel" and "not to object too much. . . ." He acknowledged, in retrospect, that perhaps he should have objected, but opined that he did not believe the evidence "hurt us too much." We conclude there is no reasonable probability that, absent the admission of the evidence of the baseball-bat incident, the jury would have had a reasonable doubt with regard to appellant's guilt. *Woods v. State*, supra, 271 Ga. 452 (2).

(ii) As part of its case-in-chief, the State presented the testimony of a man who was an inmate in the county jail when appellant's co-defendant was there. The inmate had written to law enforcement officers that the co-defendant told him he killed the victim because the victim had cheated him in a drug deal and was "messing around" with his girlfriend, and he planned to blame the killing on his girlfriend, testify against her, and plead guilty to concealing the body. The inmate also related that the co-defendant said he had forced appellant to help him by threatening to kill her as well. At trial, the inmate testified to the contents of his written statement except the portion about the threat made to appellant, which was redacted due to concerns about a possible violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Appellant contends her

counsel rendered ineffective assistance by failing to have the redacted portion admitted into evidence following the testimony of the declarant, co-defendant Rolland. While trial counsel may have performed deficiently in failing to have the redacted material entered into evidence following the co-defendant's testimony, appellant did not establish she suffered prejudice therefrom since the redacted statement corroborates appellant's coercion defense to the charge of concealing a death and the trial court granted appellant's motion for new trial on that charge. See Division 3, supra. Accordingly, the trial court did not err when it failed to find ineffective assistance of counsel in this regard.

(iii) For the reasons stated in Division 3, supra, appellant has failed to establish prejudice from trial counsel's failure to ask for a jury charge on coercion and to argue that principle of law to the jury; accordingly, trial counsel's deficient performance in this regard does not amount to ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2005.

*Lloyd J. Matthews*, for appellant.
*Jewel C. Scott, District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Frank M. Gaither, Jr., Assistant Attorneys General*, for appellee.