S06A0533. ROLLAND v. THE STATE.

(630 SE2d 386)

SEARS, Chief Justice.

The appellant, Reginald Rolland, and his co-defendant, Georgette Thornton, were jointly indicted for the murder of Andre Harrison. After a joint trial, a jury found Rolland guilty of felony murder, aggravated assault, and concealing a death, and found Thornton guilty of felony murder and concealing a death.[1] In *Thornton v. State,*[2] we affirmed Thornton's convictions. On appeal, Rolland contends that his trial counsel provided ineffective assistance of counsel; that the trial court erred by dismissing the malice murder count of the indictment; and that the trial court improperly curtailed his cross-examination of a polygraph examiner. Finding no merit to these contentions, we affirm Rolland's convictions.

1. Although Rolland does not contest the sufficiency of the evidence to support his convictions, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable

---

[1] The crimes occurred on August 16, 2002. On June 4, 2003, Rolland and Thornton were indicted for malice murder, felony murder, aggravated assault, and concealing a death. On September 25, 2003, a jury found Rolland guilty of felony murder, aggravated assault, and concealing a death. The trial court directed a verdict on the malice murder count on the ground that the State had alleged the wrong date on which the malice murder occurred. The trial court sentenced Rolland to life without parole for felony murder and to a ten year consecutive sentence for concealing a death. On October 28, 2003, Rolland filed an untimely motion for new trial. However, on May 24, 2005, the trial court granted Rolland an out-of-time appeal, and on June 6, 2005, Rolland filed a motion for new trial. On September 15, 2005, the trial court denied Rolland's motion for new trial, and on October 13, 2005, Rolland filed a notice of appeal. On November 30, 2005, the appeal was docketed in this Court, and the appeal was subsequently submitted for decision on the briefs.

[2] 279 Ga. 676 (620 SE2d 356) (2005).

doubt that Rolland shot the victim numerous times and then concealed his death.[3] The evidence is thus sufficient to support Rolland's convictions.[4]

2. Rolland contends that the trial court erred ruling against his claim that he received ineffective assistance of trial counsel.

(a) At trial, Rolland's trial counsel conducted the trial with the goal of preserving his right to make final closing arguments to the jury.[5] Rolland, however, contends that trial counsel did not understand that he could call a witness for impeachment purposes and not lose his right to conclude final arguments, and that trial counsel erred in not calling a key witness for impeachment purposes.

Rolland's assertion that trial counsel could have called a witness for impeachment purposes and not lost his right to conclude final arguments is erroneous. We have held that under OCGA § 17-8-71, the relevant inquiry is not the purpose for which evidence is introduced, but whether the defendant has in fact introduced evidence other than the defendant's oral testimony.[6] Moreover, it has been held that when a defendant introduces evidence for impeachment purposes, he has lost the right to conclude final arguments.[7] For these reasons, trial counsel did not perform deficiently by failing to call the impeachment witness as part of his strategy to preserve concluding closing arguments.

(b) During the course of the trial, Thornton called a witness in her defense, which meant that Rolland, as well as Thornton, lost his right to make the final closing argument to the jury.[8] Rolland contends that trial counsel's performance was deficient because he did not know that, if Thornton called a witness to testify, Rolland would lose his right to conclude closing argument, and that he should have abandoned the trial strategy of preserving his right to conclude final arguments in favor of a strategy of introducing evidence, particularly

---

[3] For a detailed statement of the facts, see *Thornton*, 279 Ga. at 677-678.

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] See OCGA § 17-8-71. At the time of Rolland's trial in 2003, that Code section provided that "[i]f the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury." After a 2005 amendment, see Ga. Laws 2005, p. 25, § 10, a defendant no longer has this right. OCGA § 17-8-71 now provides that "[a]fter the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. The defendant shall be entitled to make a closing argument prior to the concluding argument of the prosecuting attorney." The General Assembly provided that the 2005 amendment applies to all trials commenced on or after July 1, 2005. See Ga. Laws 2005, p. 29, § 17.

[6] *Kennebrew v. State*, 267 Ga. 400, 404, n. 2 (480 SE2d 1) (1996).

[7] See *Lane v. State*, 274 Ga. 751 (559 SE2d 455) (2002); *Warnock v. State*, 195 Ga. App. 537, 539 (394 SE2d 382) (1990).

[8] See *McDuffie v. Jones*, 248 Ga. 544 (2) (283 SE2d 601) (1981), overruled on other grounds in *West v. Waters*, 272 Ga. 591 (533 SE2d 88) (2000); *Rogers v. State*, 205 Ga. App. 739, 744 (423 SE2d 435) (1992).

testimony from the impeaching witness in question. However, even assuming that trial counsel provided deficient performance in his trial strategy, we conclude that Rolland has failed to carry his burden to show that there is a reasonable probability that, if trial counsel had chosen to introduce evidence at trial, the outcome of the trial would have been different.

In this regard, Rolland points to two witnesses that trial counsel should have called to testify at trial. According to Rolland, one of these witnesses would have testified that she saw Thornton chase Rolland with a knife on one occasion. However, an examination of the record indicates that Thornton admitted to this conduct when she testified at trial and that Rolland also testified about the incident. Accordingly, we conclude that there is no reasonable probability that the other witness's testimony about Thornton would have changed the outcome of the trial.

The second witness that Rolland contends that trial counsel should have called to testify at trial testified at the hearing on Rolland's motion for new trial. The witness, Ralph Cheek, testified that he would have offered evidence impeaching a State's witness, Douglas Hollingsworth. At trial, Hollingsworth testified that he was in jail with Rolland just before trial; that Rolland told him that the victim was at his house to make a drug deal; that the victim previously had "ripped him off" on a drug deal; that the victim was "messing around" with his girlfriend; and that Rolland and the victim got in a fight and Rolland killed him.

At the motion for new trial hearing, Cheek testified that, if called as a witness at trial, he would have testified that he was in jail with Hollingsworth just before Rolland's trial; that Hollingsworth told him that he was going to testify against Rolland; and that Hollingsworth said "he was gonna do anything to get out of this jail, he said he didn't care if he was lying or whatever, he said he was gonna get out."

We conclude, however, that even if Cheek had testified at trial, there is not a reasonable probability that the outcome of the trial would have been different. First, at trial, Hollingsworth testified that he was in jail for driving on a suspended license; that he was also on probation in another county for driving on a suspended license; and that in the 1970s, he had been convicted of a felony. Thus, at trial, Hollingsworth's general credibility was attacked. Moreover, at trial, Hollingsworth testified that he was scheduled to be released from custody in a few days, and there was no evidence, either at trial or at the motion for new trial hearing, that Hollingsworth faced other immediate incarceration, thus undermining Cheek's claim that Hollingsworth said he would do anything to get out of jail. In addition, at trial, Hollingsworth's testimony was consistent with other testimony

at trial, indicating that Hollingsworth had had discussions with Rolland about the details of Rolland and Thornton's relationship with the victim. For instance, several witnesses testified, as did Hollingsworth, that Rolland was upset with the victim for having sex with Thornton. Finally, in addition to Thornton's testimony that Rolland shot the victim, the evidence also showed that Rolland gave numerous inconsistent statements to the police after he was arrested; that Rolland was upset with the victim for having sex with Thornton; that there was testimony that Rolland planned to sell his house and a car immediately after the victim was killed; and that he called another person about a week after the victim's death and asked that person how to make a dead body stop smelling.

For the foregoing reasons, we conclude that even if trial counsel had foregone his strategy of preserving final closing argument and called Cheek as a witness at trial, there is not a reasonable probability that the outcome of the trial would have been different.

3. Contrary to Rolland's contention, we conclude that he has failed to show either error in, or harm from, the trial court's grant of a directed verdict of acquittal on the malice murder count of the indictment.[9]

4. Based on a stipulation by Thornton, the trial court admitted evidence by a polygraph examiner regarding a polygraph exam he administered to Thornton. The examiner testified that the computerized scoring algorithm that is a part of his equipment indicated that there was a greater than 99% probability that Thornton was being deceptive during the examination. At trial, Rolland asked the examiner whether, in his opinion as an expert, that meant that Thornton was not telling the truth. Thornton objected on the ground that it was for the jury to determine whether Thornton was telling the truth, and the trial court sustained the objection. On appeal, Rolland contends that the trial court erred by limiting his cross-examination of the polygraph examiner. We conclude, however, that even if the trial court erred, the error was harmless, as the examiner testified several times that the results of his polygraph exam showed a greater than 99% probability that Thornton was being deceptive during the exam.[10]

Moreover, we conclude that the trial court's limitation of Rolland's cross-examination did not diminish the jury's ability to understand the trial court's correct charge to the jury on how to consider the results of a polygraph test.[11]

---

[9] See OCGA § 17-9-1.

[10] See *Duckworth v. State*, 268 Ga. 566, 569-570 (492 SE2d 201) (1997).

[11] *Lockett v. State*, 258 Ga. App. 178, 181 (573 SE2d 437) (2002); *State v. Chambers*, 240 Ga. 76, 80 (239 SE2d 324) (1977).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 2006.

*John A. Beall IV*, for appellant.

*Jewel C. Scott, District Attorney, Ira M. Sudman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.