S08A1178. McKENZIE v. THE STATE.
(667 SE2d 43)

HINES, Justice.

A jury found Ricky Darrell McKenzie guilty of felony murder, aggravated assault with a deadly weapon, aggravated assault, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Jessie Williams and the aggravated assault of Eric Smith. McKenzie appeals his convictions, challenging the sufficiency of the evidence, a preliminary remark to the venire, portions of the charge to the jury, and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that on

---

[1] The crimes occurred on July 15, 2002. By indictment of a Fulton County grand jury dated June 3, 2003, McKenzie was charged with Count 1 – the malice murder of Jessie Williams; Count 2 – the felony murder of Jessie Williams while in the commission of aggravated assault; Count 3 – the aggravated assault with a deadly weapon of Jessie Williams; Count 4 – the aggravated assault of Eric Smith; Count 5 – possession of a firearm during the commission of a felony, to wit: aggravated assault; and Count 6 – possession of a firearm by a convicted felon. McKenzie was tried before a jury March 1-5, 2004, and found guilty of Counts 2, 3, 4, and 5. He was acquitted of Count 1 and Count 6 was dismissed. By orders dated March 4, 2004 and filed March 9, 2004, McKenzie was sentenced to life in prison on Count 2, a concurrent ten years in prison on Count 4, and a consecutive five years in prison on Count 5; the trial court found Count 3 merged for the purpose of sentencing. A motion for new trial was filed by trial counsel on March 5, 2004. On March 17, 2004, McKenzie, pro se, filed a "motion for new trial and amended motion for new trial," alleging the ineffective assistance of trial

July 15, 2002, Jesse Williams, known on the street as "Ghost," and Ricky McKenzie, known on the street as "Slick Rick," returned to a rooming house in Fulton County, thought to be a "crack house," where they, Eric Smith, and other men were staying. Williams and McKenzie had cases of beer that they had stolen from a delivery truck. An unidentified young man purchased some of the beer from Williams, but was unable to take immediate possession and indicated he would return for it later. After the man left, McKenzie and Williams re-sold the beer. Upon returning and discovering his beer gone, the young man threatened to "shoot the whole house up" if the beer was not returned. The young man later spoke with Williams, and shortly thereafter, turned on McKenzie, pointing a handgun at him and firing one shot, which ricocheted off the wall.

Following the incident, a fight broke out between McKenzie and Williams stemming from the sale of the beer and Williams's conversation with the young man. McKenzie and Williams fought with each other using bricks and glass bottles and Williams was "roughed up or bruised." McKenzie walked away threatening Williams, "I ain't through with you, I'm still going to get you." As McKenzie ran past Smith, McKenzie muttered, "I'm going to kill that n _ _ _ _ r."

Smith and Williams attempted to get back into the rooming house, but the door had been locked by fellow resident Ernest Carson. As they were banging on the door, Smith saw McKenzie returning, "coming through the cut with a rifle." McKenzie walked up the walkway stating, "What I tell y'all f_ _ k n_ _ _ _ rs." He then aimed his rifle at Smith and Williams, saying, "didn't I tell you I'm going to kill you?" Smith ran from the porch, but Williams panicked and stood frozen in place. McKenzie fired a single shot at Williams, who fell to the ground. Carson, who was still inside the rooming house, immediately went to the window after hearing the gunshot. McKenzie aimed the rifle at Smith, who was in the driveway, but lowered the weapon and fled from the scene. Williams died on the scene from a single gunshot wound to the back. McKenzie evaded police for several weeks before finally being apprehended. Both Smith and Carson testified at trial for the State and identified McKenzie as the shooter.

1. McKenzie complains that his convictions were "obtained using tainted evidence" in that State's witnesses were "either guessing, mistaken, or lying."

counsel. New appellate counsel filed an amended motion for new trial on September 28, 2007. The motion for new trial, as amended, was denied on October 30, 2007. A notice of appeal was filed on November 26, 2007, and the case was docketed in this Court on March 27, 2008. The appeal was submitted for decision on May 19, 2008.

Specifically, McKenzie posits that Smith is a "homeless crack addict," and therefore, he must have a criminal history, and the absence of such establishes that he lied about his identity. However, McKenzie fails to provide any support for such speculation. He further urges that Smith's testimony regarding McKenzie's possession of an assault rifle and his motive to kill Williams was unreliable. But, Smith was cross-examined by the defense, and his credibility, like that of any witness, was a matter exclusively within the province of the jury. OCGA § 24-9-80; *Gibson v. State*, 283 Ga. 377, 379 (3) (659 SE2d 372) (2008).

McKenzie further complains that the testimony of a detective, Balkcom, regarding the ballistics results from the State crime lab was not reliable as the detective had no first-hand knowledge about the tests, no expert from the crime lab testified about the recovered bullet, and no ballistics report was provided to defense counsel during discovery. However, such testimony was elicited by McKenzie on cross-examination, and he did not object to the detective's response; therefore, he cannot now complain about it.[2] *Phillips v. State*, 275 Ga. 595, 599 (6) (571 SE2d 361) (2002). Here again, the credibility of the witness was a matter for the jury. *Gibson v. State*, supra at 379 (3).

The evidence was sufficient to enable a rational trier of fact to find McKenzie guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. McKenzie contends that the trial court's preliminary remark to the members of the venire that reasonable doubt "is just basic common sense and fairness" was error because it lowered the standard of proof or misled or confused the jury with regard to the State's burden. However, as McKenzie concedes, he failed to object at trial. The failure to object to the substance of a pre-voir dire charge waives any such issue for appellate review. *Bridges v. State*, 279 Ga. 351, 356 (9) (613 SE2d 621) (2005). Moreover, contrary to McKenzie's urging, OCGA § 5-5-24 (c)[3] is of no aid because it "concerns the charge to the jury at the end of the case. . . . This statute does not

---

[2] Although not enumerated as error, in argument McKenzie asserts that inasmuch as the detective's testimony was improper, the prosecutor's comment on such testimony in closing argument was improper. But, here again, there was no objection lodged at trial, and in any event, there has been no showing that the detective's testimony was infirm.

[3] OCGA § 5-5-24 (c) provides:

> Notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not.

relieve the criminal defendant of the obligation to make timely objection throughout the trial." *Foshee v. State*, 256 Ga. 555, 557 (2) (350 SE2d 416) (1986). In any event, at the conclusion of the trial, the trial court gave the jury thorough and correct instructions on the presumption of innocence, the State's burden of proof, and the definition of reasonable doubt.

3. McKenzie next contends that the trial court erred in its instructions to the jury on witness identification and felony murder.

(a) Citing *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), McKenzie argues that the trial court erred by using the "level of certainty" charge in instructing the jury on assessing the reliability of eyewitness identification. But, "the giving of such an instruction does not require reversal when there is other significant evidence corroborating the eyewitness identification." *Swanson v. State*, 282 Ga. 39, 44 (5) (644 SE2d 845) (2007). In this case, both eyewitnesses, one of whom was not a victim, identified McKenzie as the shooter, and the version of events related by each eyewitness corroborated that of the other; in addition, the forensic pathology corroborated the circumstances related by the eyewitnesses. Id. Moreover, McKenzie's flight and attempt to elude authorities support the other evidence of his culpability for the crimes. See *Johnson v. State*, 275 Ga. App. 161 (620 SE2d 433) (2005). Furthermore, the jury was instructed about the State's burden of proof regarding McKenzie's identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations. *Swanson v. State*, supra at 44 (5). Consequently, it is highly probable that the trial court's charge to the jury on level of certainty did not contribute to the verdicts, and was therefore, harmless. Id.; see also *Woodruff v. State*, 281 Ga. 235, 236 (2) (637 SE2d 391) (2006).

(b) The trial court gave the jury the pattern charge on felony murder, which encompasses the elements of the felony murder statute, OCGA § 16-5-1 (c).[4] The pattern charge, in a case such as this which also involves malice murder, states:

> A person also commits the crime of murder when, in the commission of a felony, that person causes the death of another human being with or without malice.

See Council of Superior Court Judges of Georgia, Suggested Pattern

---

[4] OCGA § 16-5-1 (c) provides:
A person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice.

Jury Instructions, Vol. II: Criminal Cases, Sec. 2.10.20, p. 3 (4th ed. 2007). McKenzie complains that the legislative intent was to exclude "malice" from felony murder and that the inclusion of the phrase "with or without malice" in the jury instruction caused "unnecessary confusion for the jury" as demonstrated by a question asked by the jury during deliberations. But, the question cited by McKenzie concerned "legal definitions of aforethought, premeditated, [and] deliberate" in regard to the offense of malice murder, and in no manner demonstrates that the jury was confused about what constituted felony murder. See *Mezick v. State*, 291 Ga. App. 257, 263 (3) (661 SE2d 635) (2008). Also, contrary to McKenzie's assertion, this Court did not in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), impliedly reject the language at issue. In fact, this Court stated, "We are aware that OCGA § 16-5-1 (c) authorizes a felony murder conviction 'irrespective of malice.' " *Edge* at 866, n. 2. Indeed, the *presence or absence* of "malice" is irrelevant to the commission of the crime of felony murder. *Knight v. State*, 271 Ga. 557, 559 (2) (521 SE2d 819) (1999). The trial court did not err in giving the pattern charge on felony murder.

4. Lastly, McKenzie contends that his trial counsel provided ineffective assistance in several respects. But, in order for him to prevail on his claim of ineffectiveness, McKenzie must show that his attorney's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of his trial would have been different; moreover, the strong presumption exists that counsel's conduct falls within the broad range of professional conduct. *Browning v. State*, 283 Ga. 528, 529 (2) (661 SE2d 552) (2008).

(a) McKenzie first contends that trial counsel was ineffective for failing to object and move for a mistrial when Smith allegedly placed McKenzie's character in issue in recounting the circumstances under which Smith identified McKenzie's photograph for the police. McKenzie cites Smith's testimony on direct examination that the police "looked up" the photograph in the "record book," and later his testimony in cross-examination that he learned McKenzie's real name, as opposed to his street name, when the police showed him McKenzie's "report." However, passing references to a defendant's record does not put his character in issue. *Junior v. State*, 282 Ga. 689, 692 (4) (653 SE2d 481) (2007). Even assuming that such references placed McKenzie's character in issue, trial counsel testified at the hearing on the motion for new trial that he did not object to the testimony in order to prevent bringing more attention to it. Generally, the decision of whether to object when a defendant's

character is placed in issue is a matter of trial tactics and does not amount to ineffective assistance of counsel. *Grier v. State*, 276 Ga. App. 655, 663 (4) (d) (624 SE2d 149) (2005).

(b) McKenzie next contends that trial counsel was ineffective for calling Carson as a defense witness instead of reserving the right to recall him for further cross-examination for the purpose of impeachment, thereby forfeiting the right to concluding closing argument.[5]

Trial counsel testified at the motion-for-new-trial hearing that he decided it was most beneficial to attempt to impeach Carson with a tape of his prior inconsistent statements, and that he needed a recess to retrieve the tape after he realized he did not have it with him. Pretermitting McKenzie's further complaints in argument regarding the initial failure to have the tape and of not reserving the right of cross-examination following the recess, the decision whether to introduce evidence, and thus lose the right to make the concluding closing argument, is one of trial strategy. *Giddens v. State*, 276 Ga. App. 353, 357 (3) (c) (623 SE2d 204) (2005), citing *Washington v. State*, 276 Ga. 655, 659 (3) (c) (581 SE2d 518) (2003). And matters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it. *Giddens v. State,* supra at 357 (3) (c); see also *Jackson v. State*, 278 Ga. 235, 239 (5) (a) (599 SE2d 129) (2004). Inasmuch as the decision to call Carson as a defense witness was not patently unreasonable, and because McKenzie provides no basis for concluding that the result of his trial would have been different if he had last closing argument, he has not shown that his trial counsel was ineffective in this regard. *Giddens v. State,* supra at 357 (3) (c).

(c) McKenzie next maintains that trial counsel was ineffective for not attempting to impeach Carson with evidence of Carson's conviction for the sale of cocaine. However, Carson admitted on the stand that prior to and at the time of the crimes on trial, he had a substance abuse problem and that in order to support his habit, he

---

[5] At the time of McKenzie's trial in 2004, OCGA § 17-8-71 stated: "If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury"; however, the statutory provision was amended in 2005, see Ga. Laws 2005, p. 25, § 10, to abolish the right of a defendant to concluding argument. *Rolland v. State*, 280 Ga. 517, 518 (2) (a), n. 5 (630 SE2d 386) (2006). Present OCGA § 17-8-71, which applies to trials commenced on or after July 1, 2005, see Ga. Laws 2005, p. 29, § 17, provides:

> After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. The defendant shall be entitled to make a closing argument prior to the concluding argument of the prosecuting attorney.

*Rolland* at 518 (2) (a), n. 5.

did "a lot of shoplifting, misdemeanors, felonies, things like that." And, trial counsel testified at the hearing on the motion for new trial that inasmuch as Carson's involvement with drugs and criminal activity were already "out in the open" he believed it of more benefit to attempt to impeach Carson with the tape of his prior inconsistent statements.

> Informed strategic decisions do not amount to inadequacy. . . . The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.

*Lynch v. State*, 280 Ga. 887, 889 (3) (635 SE2d 140) (2006) (citations and punctuation omitted.) McKenzie has failed to show ineffectiveness with regard to this issue. Id.

(d) McKenzie next claims ineffectiveness based upon trial counsel's failure to attempt to impeach Detective Balkcom with his own report in that Balkcom testified that the police did not find bullets or shell casings consistent with the caliber of the murder weapon or the weapon itself at the crime scene when in fact the police recovered a .380 handgun in the front yard next door and three shell casings in the street in front of that house. However, trial counsel testified at the motion-for-new-trial hearing that he did not believe that Balkcom's police report was inconsistent with or contradictory to his testimony at trial. Indeed, counsel related that Balkcom's police report indicated that the found handgun casings were unrelated to the homicide as the handgun was "coated with spider webs" and the casings would not have matched a rifle. McKenzie further complains that trial counsel failed to recognize that Balkcom's testimony was slanted to support his own erroneous theories and confuse the jury about the actual character of the crime scene and neighborhood; but, such claims of Balkcom's bias and motivation in his testimony are pure speculation. McKenzie has simply failed to show ineffectiveness with regard to this issue as well. *Lynch v. State*, supra at 889 (3).

(e) McKenzie also claims ineffectiveness of trial counsel with regard to Balkcom's testimony about the ballistics findings made by the crime lab on the bases that the testimony was hearsay and counsel should have objected to it, and that the ballistics report was not supplied in discovery. But, trial counsel testified that the overall defense strategy was that McKenzie did not commit the crimes; therefore, the "specifics of the crimes" were "less material" and that such defense influenced his decisions with regard to making objections at trial.

> The matter of when and how to raise objections is generally a matter of trial strategy. Here, it cannot be said that trial counsel's decision[s] to forego objection[s] [were] professionally unreasonable choice[s]. It is of no moment that following trial, the attorney might regret the decision to remain silent, for effectiveness is not judged by hindsight or result.

*Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) (citations omitted). What is more, the fact that present counsel would have pursued a different strategy does not render trial counsel's strategy unreasonable. *Nix v. State*, 280 Ga. 141, 143 (3) (625 SE2d 746) (2006).

McKenzie has failed to show that trial counsel's performance was deficient.[6] *Browning v. State*, supra at 529 (2).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 22, 2008.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.

---

[6] In preliminary argument in brief regarding trial counsel's alleged ineffectiveness, McKenzie "notes" trial counsel's mistaken motion for a directed verdict of acquittal on the charge of aggravated assault upon Smith as alleged in a superceded indictment; however, this, in and of itself, does not demonstrate counsel's ineffectiveness. Upon knowledge of the error, trial counsel withdrew the motion and in lieu thereof made a motion for directed verdicts of acquittal on all charges in the operative indictment. Moreover, McKenzie does not allege, much less show, how the mistake affected the outcome of trial. *Browning v. State*, supra at 529 (2).