## A10A2296. HARRIS v. THE STATE.

(707 SE2d 908)

DOYLE, Judge.

Following a jury trial, James Edward Harris was convicted of rape,[1] sexual battery,[2] aggravated battery,[3] and assault.[4] Harris appeals the denial of his motion for new trial, arguing that (1) the evidence was insufficient; (2) trial counsel was ineffective by stipulating to the admission of the results of a polygraph examination; (3) trial counsel was ineffective by failing to file a motion to sever his trial from that of his co-defendant; and (4) the trial court erred by denying his motion to retain an expert to testify regarding the inherent unreliability of polygraph examinations. We affirm, for reasons that follow.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence."[5] We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6]

So viewed, the record shows that on June 10, 2005, M. L. was visiting a friend's house in Macon, where others were present, including Wendell Simmons, with whom M. L. was familiar. While at the house, Simmons used crack cocaine and drank alcohol; M. L., who had used crack cocaine earlier in the day, consumed alcohol. At some point, a man, later identified as Terry Jackson, asked Simmons to drive him home; M. L. accompanied them and a third man (later identified by M. L. as Harris) to a house in south Macon.

While there, M. L. had consensual sexual intercourse with Simmons in exchange for a ride home. When M. L. refused to have sex with Harris and Jackson as well, Harris hit her in the face with a gun, and the three men ripped her clothes off. Each of the three men forced M. L. to have vaginal intercourse and forcibly sodomized her, anally and orally. The men also punched her with their fists, making her stand on a sofa while they "would run from a distance and just hit [her]." The men hung M. L. upside down by her feet, and Harris burned her buttock with a hot iron and then poured salt and alcohol on the burn. When M. L. passed out, the men poured liquid on her face to revive her, and they forced her to clean up her blood

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-6-22.1 (b).

[3] OCGA § 16-5-24 (a).

[4] OCGA § 16-5-20 (a) (1).

[5] *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

from various rooms in the house. During the incident, while M. L. begged and pleaded for her life, Simmons told her they were going to kill her. M. L. cowered on the sofa and covered her face because she "didn't want to see them shoot [her]," and Simmons then fired his gun at the floor.[7] Harris also wielded a knife and threatened to "cut" and kill her. The men discussed needing to get a shovel to dispose of her body.

M. L. finally passed out, and when she regained consciousness the following morning, Simmons was raping her again, and Harris and Jackson were gone. Thereafter, Simmons gave M. L. permission to leave, telling her that, "You're not gonna make it to the end of the street. You'll be dead before you get there." M. L. left the house, noting details about its appearance so she could identify it later, and she went to her niece's house and called 911.

On the way to the hospital in an ambulance, M. L. identified the house where the attack occurred. Police found Simmons asleep and naked in the bedroom, and they arrested him. Police also found M. L.'s blood and other items in various rooms of the house, including the gun, an iron, shell casings from two separate firearms, a bucket and cloth, and bloody clothes.

At the hospital, M. L. was treated for facial contusions, a concussion, a fractured jaw, pain and swelling in her genital and anal regions, a urinary tract infection, and a second-degree burn on her buttock. No semen or other DNA evidence was recovered from the victim. According to the treating nurse, M. L. admitted that she had been smoking crack.

M. L. provided names for two of her assailants: "Boo," who was later determined to be Simmons, and "J. B. Harris" or "Tim." The police later obtained the name of Terry Jackson as one of the assailants, and M. L. positively identified him from a photographic lineup on June 29, 2005. Thereafter, the police identified Harris as a possible suspect, and they presented a photographic lineup to M. L. containing his photograph on September 13, 2005. M. L. positively identified Harris as one of her attackers "[within] about five seconds" of viewing the array. Harris, Jackson, and Simmons were arrested and charged with rape, aggravated sodomy, aggravated battery, and aggravated assault.

Following their arrests, counsel for Harris and Simmons entered into stipulations with the State, agreeing therein to submit to a polygraph examination, which would be admissible at trial, and agreeing "that the voluntariness or accuracy of said test and the qualifications of the polygraph examiner will not be contested

---

[7] Each of the three men had a gun.

because the test was performed as a joint decision of the State and the Defendant." The polygraph examiner detected no indicators of deception with regard to Simmons; he did detect deception on the part of Harris.

Jackson's trial was severed from the other two defendants, who were tried together. At Harris's and Simmons's trial, M. L. identified all three men as her attackers, and the polygraph examiner testified regarding the results of Harris's and Simmons's examinations. Harris testified and denied raping, beating, or burning M. L. He did admit, however, that he, Jackson, Simmons, and M. L. rode together in the car to the house in south Macon on the night of the attack and that they were in the house together. According to Harris, he left after he saw Simmons hit M. L. in the face; when he left, M. L., Simmons, Jackson, and "others" were present, and M. L. was "fine." The jury found both men guilty of rape, sexual battery (as a lesser included offense to aggravated sodomy), aggravated battery, and simple assault (as a lesser included offense to aggravated assault). This appeal follows.

1. Harris challenges the sufficiency of the evidence as to his convictions, pointing to the testimony of an alibi witness and arguing that the victim gave conflicting names for Harris, including "Wolf," "Tim," and "J. B." He also points out that there was no physical evidence connecting him to M. L.'s assault and rape and argues that the only evidence linking him to the crimes was M. L.'s testimony.

"The testimony of a single witness is generally sufficient to establish a fact."[8] "The weight of the evidence and witness credibility are not reviewable on appeal."[9] Here, M. L.'s testimony that Harris raped, sodomized, punched, burned, and threatened to kill her was sufficient to authorize his convictions.[10]

2. Harris argues that the trial court erred by denying his ex parte motion for funds to retain "a polygraph expert to testify regarding the inherent unreliability of polygraphs in general." We find no basis for reversal.

The Supreme Court of Georgia has expressly held "that upon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have."[11] Here, before administration of the polygraph examination, Harris and the State specifically stipulated to the admissibility

---

[8] (Punctuation omitted.) *Bearfield v. State*, 305 Ga. App. 37, 38 (699 SE2d 363) (2010).

[9] (Punctuation omitted.) Id. at 40 (1).

[10] See id.; OCGA § 16-6-1 (a) (1) (rape); OCGA § 16-6-22.1 (b) (sexual assault); OCGA § 16-5-24 (a) (aggravated battery); OCGA § 16-5-20 (a) (1) (assault).

[11] *State v. Chambers*, 240 Ga. 76, 76-77 (239 SE2d 324) (1977).

of the results thereof and that neither party would contest the voluntariness or accuracy of the test, nor the qualifications of the examiner. In denying Harris's motion for funds, the trial court concluded that the relief sought therein "r[a]n contrary to the spirit of the agreement into which [Harris] voluntarily entered" and that "[t]he ends of justice would not be served by the granting of th[e] motion."

Harris relies upon *Sisson v. State*,[12] in which we concluded that a defendant who stipulated to the admissibility of the results of a polygraph examination was entitled to present testimony from his own expert regarding the results of the examination.[13] Harris's reliance is misplaced. In *Sisson*, the defendant stipulated only to the *admissibility* of the examination results. As we noted in that case, "[m]erely because a party stipulates to admissibility of testimony or evidence, does not deny that party the right to contest the accuracy of that testimony or evidence."[14] Here, in contrast to *Sisson*, Harris stipulated to the admissibility, *accuracy*, and voluntariness of the examination.

Furthermore, the trial court in *Sisson* actually excluded the testimony of the proposed defense expert. In the instant case, the trial court merely denied Harris's request for funds for a defense expert regarding polygraph examinations; it did not specifically exclude the expert testimony itself.

> A motion for funds to obtain an expert witness requires a reasonable showing to the court, by the defendant, why the expert's services are required, what services are to be performed by such expert, the identity of the expert, and the cost to provide the needed services. The defendant must also demonstrate that without the assistance of the expert, the defendant's trial would be rendered fundamentally unfair. The trial court has discretion to grant or deny a motion for funds for an expert witness.[15]

Here, the record is devoid of any evidence[16] that Harris identified his potential expert by name to the trial court or that he explained in any detail the specifics of the proposed testimony, other than stating that the expert would testify "regarding the inherent unreliability of

---

[12] 181 Ga. App. 784 (353 SE2d 836) (1987).

[13] See id. at 788-789.

[14] Id. at 788.

[15] *Coalson v. State*, 251 Ga. App. 761, 766-767 (3) (555 SE2d 128) (2001).

[16] The appellate record does not contain a transcript of any hearing on the motion for expert funds. Thus, our review of this issue is limited to consideration of Harris's motion and the order only.

polygraphs in general."[17] Under these circumstances, and in light of the stipulation, we cannot say that the trial court abused its discretion by denying Harris's motion for funds for an expert on polygraph examinations.[18]

3. Harris contends that he received ineffective assistance of trial counsel. To prevail on this claim, Harris

> must show that trial counsel performed deficiently and that the result of the trial would have been different but for the deficiency. The question of ineffectiveness is a mixed one of both law and fact: we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[19]

(a) Harris contends that trial counsel was ineffective when he entered into the stipulation with the State regarding the admissibility, accuracy, and voluntariness of the polygraph examination. This claim is without merit.

Trial counsel testified at the motion for new trial that after Simmons took and "passed" a polygraph examination and was released from pretrial custody, Harris suggested to trial counsel that he submit to one as well. Counsel discussed the polygraph examination with Harris on multiple occasions, including "the potential pitfalls, the reliability and unreliability of polygraphs, inexperience of the . . . polygraph examiner, and stuff of that nature. And [Harris] was adamant[,] and he was convincing, and ultimately it was his choice." Trial counsel also testified that although his normal practice is to recommend that his clients not submit to a polygraph examination, and he initially did so in this case, he ultimately agreed that Harris should submit to one because counsel found him "exceedingly credible." Clearly, trial counsel's decision to enter into the stipulation was strategic. "[T]rial strategy and tactics do not establish ineffective assistance."[20] As our Supreme Court has held, "[s]tipulating to the admission of polygraph test results is a valid trial strategy[,] and there was evidence the ramifications were explained

---

[17] At the motion for new trial hearing, Harris's trial counsel identified the name of the expert witness he intended to have testify, but there is no evidence that he provided the name to the trial court in support of the motion for funds.

[18] See id. at 767-769.

[19] (Punctuation and footnote omitted.) *Adesida v. State*, 280 Ga. App. 764, 765 (3) (634 SE2d 880) (2006).

[20] (Punctuation omitted.) *Horne v. State*, 273 Ga. App. 132, 133 (4) (614 SE2d 243) (2005).

to [Harris]."²¹

(b) Harris further argues that trial counsel was ineffective by failing to file a motion to sever his case from that of Simmons. This claim is also without merit.

Trial counsel testified at the motion for new trial hearing that he made the strategic decision not to move to sever the trials because he wanted to support his argument that polygraph examinations are unreliable by presenting evidence that Simmons passed his polygraph examination even though more physical evidence linked Simmons to the crime scene. Counsel also believed that because there was more evidence linking Simmons to the crimes, Harris "look[ed] great" compared to Simmons. "Inasmuch as an informed strategic decision concerning severance does not amount to ineffective assistance of counsel, [Harris's] contention on this issue is without merit."²²

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

## DECIDED MARCH 17, 2011.

*William M. Ermine*, for appellant.
*Howard Z. Simms, District Attorney, Wayne G. Tillis, Dorothy V. Hull, Assistant District Attorneys*, for appellee.

---

²¹ *Thornton v. State*, 279 Ga. 676, 680 (6) (b) (620 SE2d 356) (2005). See also *Ellis v. State*, 280 Ga. App. 660, 662 (634 SE2d 833) (2006); *Horne*, 273 Ga. App. at 134 (5).
²² (Citation omitted.) *Thornton*, 279 Ga. at 680 (6) (a).