**FIRST DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 25, 2023**

# In the Court of Appeals of Georgia

A23A0396. HUTCHESON v. THE STATE.

DOYLE, Presiding Judge.

Jamie Hutcheson appeals from an order of the Superior Court of Glynn County, denying his amended motion for new trial after a jury found him guilty of criminal attempt to commit murder, aggravated battery, and aggravated assault.[1] Hutcheson argues that he was denied effective assistance of counsel because his trial attorney did not object to the introduction of evidence that Hutcheson was on probation at the time of his arrest. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-5-1 (a); 16-4-1; 16-5-24 (a); 16-5-21 (a) (2). The battery and assault charges merged into the attempted murder charge for sentencing purposes.

Viewed in the light most favorable to the verdict,[2] the evidence shows the following facts. Around 2:00 a.m. on September 27, 2018, Hutcheson, also known as "Bowser," came to the house that Jerry Casborn ("the victim") shared with his twin brother, Gary Casborn ("Casborn"), and asked the brothers for money they owed him for rent. An hour later, Hutcheson came back with another man, demanding the money. The victim gave Hutcheson $10 and promised to pay the other $10 for Casborn the following day. The men left, and Casborn went to his bedroom around 3:30 a.m.

Around 6 a.m., Casborn woke up to Hutcheson and the victim having a conversation in the next room. Casborn tried to enter the living room, but the door was locked. Casborn testified that he heard three "licks" before Hutcheson opened the latched door and told Casborn he needed to talk to him. Casborn ran outside and unsuccessfully tried to access the living room from the porch. Casborn ran back into his bedroom and into the kitchen where he discovered the victim facedown in a pool of blood.

When Casborn went back outside, he found La-Swanya Nelson and asked her to call 911. Officer Chad Strickland responded to the call and found the victim

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

unresponsive with what appeared to be blunt force trauma to the top of his head. The victim was partially paralyzed and suffered from partial memory loss as a result of his injuries.

Nelson testified at trial that, while Casborn was asking to use her phone, she saw Hutcheson run out the back door of Casborn's house. Nelson followed Hutcheson down the street and saw him throw something that sounded like metal when it landed. According to Nelson, Hutcheson was heading in the directing of a nearby boarding house where Nelson knew he stayed.

A police detective testified that he searched the area Nelson described and, at approximately 7:45 a.m., found a hammer with what appeared to be wet blood[3] on it located by an abandoned house. The area had a lot of weeds with "hitchhiker" seeds that tend to stick to clothing.

Meanwhile, officers walked to the boarding house, where Hutcheson's parole officer let them in to Hutcheson's room. Hutcheson was inside. The officers searched the room and discovered a grocery bag behind a dresser containing "wet and damp"

---

[3] A swab taken from the head of the hammer was later determined to contain DNA matching the profile of the victim.

3

clothing that "had a distinct odor of body odor on them." The clothing appeared to have splatters of blood on them, and there were "hitchhikers all across [the shirt]."

Following the guilty verdict and sentencing, Hutcheson filed a motion for new trial, which he later amended to include the claim that counsel was ineffective for failing to object to evidence that Hutcheson was on probation under a sentence imposed for an earlier crime. The trial court denied Hutcheson's amended motion, finding, inter alia, that, even assuming trial counsel's performance was deficient, Hutcheson had failed to show prejudice. The court emphasized that it had given a limiting instruction to the jury, Hutcheson's probation status was only mentioned to explain that he was subject to a Fourth Amendment waiver, his probation status had no impact on any issue of credibility, and the evidence of Hutcheson's guilt was substantial. This appeal followed.

Hutcheson argues that trial counsel was ineffective for not objecting to evidence of Hutcheson's probation status, which he contends was inadmissible character evidence under OCGA § 24-4-404.

To prevail on his claim of ineffective assistance of counsel, Hutcheson must show both deficient performance by counsel and resulting prejudice. To show deficient performance, [Hutcheson] must prove that

4

his counsel acted or failed to act in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. To show resulting prejudice, [Hutcheson] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[4]

We review the trial court's factual findings and credibility determinations for clear error, but independently apply the legal principles to the facts.[5]

At trial, the probation officer testified that he went to the boarding house on the morning of September 27 in response to a call from Officer Strickland. When the prosecutor asked how he knew Hutcheson, the probation officer responded, "[h]e's on my case load." On the morning of September 27, the probation officer confirmed that Hutcheson "had a 4th Amendment waiver[,]" which the probation officer testified was "an agreement that usually comes through a plea or sentence" providing that, while "on probation or parole[,]" the "individual" would be subject to a search of his person, vehicle, or residence without a warrant. On cross-examination, trial counsel elicited that the probation officer had not had any problems with Hutcheson.

---

[4] *Kennebrew v. State*, 299 Ga. 864, 868 (2) (792 SE2d 695) (2016).

[5] See *Burnett v. State*, 367 Ga. App. 285, 291-292 (3) (a) (884 SE2d 587) (2023).

At the hearing on Hutcheson's motion for new trial, trial counsel testified that he believed that it would not have done any good to object to evidence that Hutcheson was on probation and that, in asking whether the probation officer had experienced any problems with Hutcheson, counsel was trying to "humanize" Hutcheson and show that he was a good probationer.

Hutcheson has failed to show that counsel's performance was deficient. The State presented evidence regarding Hutcheson's status as a probationer because the probation itself, and the Fourth Amendment waiver, was inextricably intertwined with the evidence regarding the charged offenses.[6]

> The limitations and prohibition on "other acts" evidence set out in OCGA § 24-4-404 (b)[[7]] do not apply to "intrinsic evidence." . . . Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.[8]

---

[6] See *Williams v. State*, 302 Ga. 474, 485-486 (IV) (d) (807 SE2d 350) (2017).

[7] OCGA § 24-4-404 (b) provides in relevant part that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith."

[8] (Citations and punctuation omitted.) *Williams*, 302 Ga. at 485 (IV) (d).

Although the brief references to Hutcheson's probation status might have incidentally put his character at issue, this evidence remained admissible because it formed an "integral and natural part" of the officers' accounts surrounding his arrest shortly after the 911 call and the discovery of the clothing Hutcheson was wearing at the time of the offense.[9]

Based on the timing of the search and the location of the bag containing the clothing (behind Hutcheson's dresser), the jury could have reasonably concluded that Hutcheson hurriedly attempted to conceal the evidence because he knew that his home could be searched at any time without a warrant. Hutcheson's probation status was thus necessary to complete the State's story of the crime. Trial counsel's failure to make a meritless objection to the admission of the brief references to Hutcheson's probation status and the Fourth Amendment waiver was thus not deficient performance.[10]

Further, trial counsel testified that, as part of his defense strategy, he requested a limiting instruction to the jury. The trial court instructed the jury that it could only consider evidence that Hutcheson was serving a sentence of probation as it related to

---

[9] See *Williams*, 302 Ga. at 486 (IV) (d).

[10] See *Sawyer v. State*, 308 Ga. 375, 383 (2) (a) (839 SE2d 582) (2013).

the Fourth Amendment waiver. Given that the evidence was admissible for this purpose, this strategy was not "patently unreasonable."[11]

Because Hutcheson has failed to show deficient performance, we need not address the prejudice prong of his ineffective assistance of counsel claim.[12] Even assuming arguendo that counsel's performance was deficient, however, the evidence of guilt was overwhelming. Thus, there was no reasonable probability that the outcome of his trial would have been more favorable if the jury had not heard evidence that he was on probation at the time of his arrest.[13]

*Judgment affirmed. Barnes, P. J., and Land, J. concur.*

---

[11] See *McKenzie v. State*, 284 Ga. 342, 348 (4) (c) (667 SE2d 43) (2008) ("Informed strategic decisions do not amount to inadequacy. . . . The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.") (citation and punctuation omitted).

[12] See *Menzies v. State*, 304 Ga. 156, 162 (III) (816 SE2d 638) (2018) ("[I]f the defendant fails to satisfy either prong of the *Strickland* test, [the reviewing court] need not address the other prong.")

[13] See *Lambert v. State*, 287 Ga. 774, 777 (2) (700 SE2d 354) (2010).